## THE SUPREME COUNCIL OF THE ROYAL ARCA-NUM ET AL. *vs.* CAMILLA D. NICHOLSON, JR.

*Insane Persons—Necessity of Notice to Lunatic of Execution of Writ de Lunatico Inquirendo—Exception to Rule—Petition to Vacate Order Confirming Inquisition.*

The general rule is that in the execution of a writ *de lunatico inquirendo* the person alleged to be a lunatic must have reasonable notice of the time and place of taking the inquisition and an opportunity to attend and make his defense; although there be no statute requirement to that effect.

When the person alleged to be insane is out of the State, or it would be injurious to have him brought before the jury because he is in a condition of dangerous madness, or for other sufficient reason, the Court may make an order dispensing with notice to him and his personal attendance.

An order of Court confirming the inquisition of a jury that a certain person was insane and appointing a committee, when no notice of the proceeding was given to the lunatic, may be vacated upon petition to set the same arise although the order has become enrolled.

*Decided December 19th, 1906.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*James McC. Trippe* (with whom was *A. C. Trippe* on the brief), for the appellant.

The contention of the appellants is supported by a long list of authorities by which proceedings in lunacy without notice to the party to be affected are held to be null and void and are set aside. *Chase* v. *Hathaway*, 14 Mass. 224; *Eddy* v. *The People*, 15 Ill. 387; *Matter of Whitenack*, 3 N. J. Eq. 252; *Matter of Van Auken*, 10 N. J. Eq. 190; *Ex parte Dojier*, 4 Baxter (Tenn.) 83; *Holman* v. *Holman*, 80 Me. 141.

Under the New York Code, sec. 2355, notice is required to be given to relatives.   It does not require notice to the lunatic. *Matter of Blewitz*, 131 N. Y. 546, 547; *Gridley* v. *College of Francis Xavier*, 137 N. Y. 330.

The remedy depends upon the facts of the case and the relief asked for.   Where the defects, as in this case, are apparent on the face of the proceedings, or objection is against the manner in which the writ is executed the remedy is by motion to quash the writ and proceedings under it; and by traverse where the party affected waives his right to have the proceedings quashed and joins issue on the question of his sanity.

"A motion to quash may be made by the supposed lunatic or any of his near relatives in his behalf or by his grantee or any other person whose interests may be affected by the finding of the jury.   It may be likewise made by the party applying for the commission."   *Alexander's Ch. Pr.*, 226, 227.

The record should show on its face that the party aggrieved had notice of the proceedings against her.   *Eddy* v. *People*, 15 Ill. 387; *Mayo's case*, 10 Pa. Co. R. 288–89.

The remedy he shall have is determined by the party aggrieved.   If he petition that the writ be quashed for lack of notice and the facts support it, he is entitled to have the inquisition quashed.   If he waives his right to have proceedings quashed for want of notice and prays a traverse upon the question of his sanity, he is entitlld to it, but his waiver should be clear and explicit.   The remedies are his of right.   *Ulman* v. *Mayor & C. C. of Balto.*, 72 Md. 587.

*Richard H. Pleasants,* for the appellee, submitted the cause on his brief.

In Maryland there is no statutory law which requires notice of an inquisition to be given to one as to whom a writ *de lunatico inquirendo* has issued, nor are there even any decisions of its Courts which indicate that such notice is essential.   On the contrary, it has never been the practice here to summon the party alleged to be a lunatic.   And this custom, long and

unvarying, so far from being illegal, has been, from the earliest to the present time, sanctioned by our Courts, which by statute "have *fnll* power and authority, in all cases, to superintend and direct the affairs of persons *non compos mentis*, both as to the care of their persons and the management of their estates," appointment of committees, etc.    Code 1904, Art. 16, sec. 107.

In *Alexander's Chancery. Practice*, 225, it is said that "since the proceeding is *ex parte* and *not conclusive* no notice need be given of the time and place appointed for the execution of the commission to the party affected by it."    The meaning of which is that since said party has the statutory right to at any time have the commission superseded, Code 1904, Art. 16, sec. 116, the method by which the *ex parte* action is brought about is entirely unimportant.    In fact, such party may, at any time thereafter, whether notified or not of the jury's inquisition, supersede and set aside its finding by a petition alleging and proof-showing sanity.    In other words, the issuance of such a writ, the inquisition and finding of insanity by the jury and the appointment of a committee are not final, or even prejudicial, but are merely for the protection of life and property until the sanity of the party is established upon his or her *own* motion.    And these reasons for dispensing with notices in such cases have been recognized by the English Courts, *Am. & Eng. Ency.*, vol. 16, p. 567, which reasons exist also in Maryland since the Chancellor of Maryland (now Courts of equity) has been invested with all the powers in relation to infants and lunatics, with which the Chancellor of England has been clothed.    *Corrie's case*, 2 Bl. 492.

Now, manifestly, if the appearance of the party alleged to be a lunatic before the jury of inquisition is not necessary, neither, of course, is the summons, since the latter is only for the purpose of enabling him or her to appear, and would be useless if not intended to accomplish such a purpose.    Upon this point our Courts have twice directly passed.    In *Campbell's case*, 2 Bl. 217, when the point was raised *before* the issuance of the writ and the signing of the decree appointing a

committee, the Court said it is "not always necessary to have the afflicted party brought before the jury." Surely if the Court held such views before the issuance of the writ and the appointment of a committee and at a time when it would be so easy, and without prejudice to any party in interest, to require the presence of the alleged lunatic, it is only reasonable to suppose the same rules will apply after the appointment of a committee and after the performance by it of acts, the making void of which might prejudice many interests.

In *Morgan's case*, 3 Bl. 332, it is said that only "where *doubt exists* as to the soundness of mind of one declared a lunatic, he should be apprised of the fact and of the Chancellor's readiness to hear any communication from him or on his behalf." In the case now before the Court there is no evidence that such doubt existed before the inquisition so that the lunatic might be apprised of it.

For the most part those of other States are the same, except where statutes exist requiring notice. Says the *Enc. of Pl. & Pr.*, vol. 10, p. 1185, the matter is largely regulated by statute in the United States, which latter view is adopted in *Charannes* v. *Priestly*, 80 Iowa, 316, wherein it was held that where, under a statute, no service of notice is provided for, one adjudged insane and committed without notice is not deprived of his liberty without due process of law. So, also, in *Southern Tier, etc.*, v. *Laudenbach*, 5 N. Y. 901, Sup., it is said whether or not notice shall be required in proceedings *in rem* depends upon the statute, and that no question of constitutional power is involved, and that the Fifth Amendment of the United States Constitution has nothing to do with it, and that even where the statute provides for it, neglect to give it is simply an *irregularity* which does not avoid the proceedings. Again, in the *Matter of Dement*, 27 Hun. N. Y. 480, it was held that "the Court has the power to waive the notice for reasons satisfactory;" an opinion which is entirely inconsistent with the view that service of notice goes to the jurisdiction.

That our own Courts agree with those of other States that the failure to give notice in such cases is no infringement of a

constitutional right, is indicated by the following authorities: In *Wright* v. *Wright*, 2 Md. 451, it was decided that when a woman applied to the Legislature for a divorce without notice to her husband, and after said Legislature had passed a law authorizing the Court to grant divorces upon notices given to the opposite party, such divorce as granted by the Legislature was not void, as contended by the husband. Thus, a husband, by a failure to receive notice of the proceedings, might be deprived of his right of curtesy. Also in *Roth* v. *House of Refuge*, 31 Md. 334, the Court said that the power of Justices of the Peace to commit, and of the managers of the House of Refuge to detain, minors charged as and proved to be persons of incorrigible or vicious conduct, is proper, and such powers are in no wise in conflict with the Declaration of Rights or the Constitution of this State.

Here in Maryland it is the care of and sale of the lunatic's property that is carefully guarded by our Courts. That might be squandered beyond recovery unless so protected, while if so protected said lunatic may always recover the same, as well as his personal liberty, by reason of his right to supersede. As an example of this, the Court, in *Hamilton* v. *Traber*, 78 Md. 34, refused to authorize the *sale* of an alleged lunatic's property in the same original proceeding wherein the appointment of a committee for said alleged lunatic was asked, since according to the Code such sales could only be accomplished by a committee *already appointed* and after he had complied with certain *statutory regulations*, the Court there denying the right of the petitioner to strip one of the ownership of his property upon the *mere ex parte proof* of the owner's mental infirmity, thus not questioning the right to so adjudge one a lunatic, but only the right to sell said lunatic's property in any other manner than a strict compliance with the statutes.

But in addition to other reasons advanced, it is now too late to question the decree in this case. The Code, 1904, Art. 16, sec. 177, provide that all final decrees or orders in the nature thereof, shall be considered enrolled from and after thirty days from the date of the same, while sec. 179 provides that no re-

hearing shall be granted after the enrollment thereof. The record in this case indicates that the decree appointing the committee was filed on December 1st, 1905, and that no objection was made thereto until April 20th, 1906, a period of four months and twenty days thereafter.

As to the right to question a decree appointing a committee on the ground that the lunatic was not present, see *Arlington* v. *Short*, 3 Hawk, 10 N. C. 71.

BURKE, J., delivered the opinion of the Court.

This appeal presents an important question of practice relating to the execution of the writ *de lunatico inquirendo.* The question arises in this way. Upon the application of Camilla D. Nicholson, Jr., to the Circuit Court No. 2, of Baltimore City, a writ *de lunatico inquirendo* was issued to the Sheriff of Baltimore City commanding him to summon a jury to inquire into the mental condition of Camilla D. Nicholson, who was alleged in the petition to be of unsound mind and a lunatic. The jury was summoned as directed, and by their inquisition, which was returned to the Court by the Sheriff, Camilla D. Nicholson was found to be of unsound mind, and incapable of the government of herself, or the management of her estate, and that she had been in such state of mind for more than three years past. The inquisition was confirmed by the Court, and on the same day, towit, the 1st day of December, 1905, Camilla D. Nicholson, Jr., was appointed committee of the person and estate of the said Camilla D. Nicholson.

The Supreme Council of the Royal Arcanum had issued a benefit certificate to Edwin C. Nicholson who had died on the 7th day of October, 1905, before the lunacy proceedings had been instituted. By the terms of the certificate the sum of three thousand dollars was payable to the alleged lunatic upon the death of the assured. The Court passed an order upon the petition of the committee authorizing her to employ counsel and institute proceedings for the collection of said sum. In pursuance of that order, the committee sued the Supreme Council of the Royal Arcanum in the Superior Court of Bal-

timore City for the recovery of the amount payable under the benefit certificate. Thereupon the Supreme Council of the Royal Arcanum and Camilla D. Nicholson filed a petition in the lunacy case wherein they prayed:

(*a*) "That the said writ *de lunatico inquirendo* hitherto issued in these proceedings, and the said inquisition held by the Sheriff of Baltimore City aforesaid, and the return of the said writ may be quashed, and that the order confirming the said inquisition may be set aside, and that a new writ *de lunatico inquirendo* may issue in order that the sanity of the said Camilla D. Nicholson may be lawfully inquired into, and that in the execution of the same her legal rights and personal liberty and the care of her property may be regarded.

(*b*) That an order may be passed in the premises forbidding the said Camilla D. Nicholson, Jr., committee as aforesaid, to prosecute the said suit in the Superior Court of Baltimore City until the further order of this Court.

(*c*) That an order may be passed in the premises requiring the said Camilla D. Nicholson, Jr., committee as aforesaid, to show cause on or before a day to be named therein why the relief prayed for should not be granted."

The grounds upon which this relief was asked are stated in third paragraph of the petition as follows: "That the appointment of the said Camilla D. Nicholson, Jr., as committee of the said Camilla D. Nicholson, is defective and illegal on the face of the inquisition, and in the manner in which the writ was executed for the reason that the said Camilla D. Nicholson, who was at the time of the execution of the said writ within the State of Maryland, had no opportunity presented to her to appear in person before said jury, and had no notice of the time and place of the inquisition, and did not appear before said jury, although it was practical and convenient for her to do so, and it was practical and convenient for said jury to have required her attendance before them, and to have notified her of said inquisition, and that said jury made said inquisition without having said lunatic before them, and without seeing her in person in order to judge of her mental condition and without said

alleged lunatic having an opportunity to be heard, and that it does not appear on the face of the proceedings, nor upon the face of the return of the writ that said lunatic appeared before said jury, or that her presence was impracticable or inconvenient, or that there was any reason for her absence, or that she had notice of said inquisition; and your petitioners further represent that said Camilla D. Nicholson did not in fact appear before said jury of inquisition, and that under the circumstances of this case her presence was indispensably necessary."

Upon the filing of the petition the Court passed an order *nisi,* requiring the committee to show cause on or before a certain day why the relief prayed for should not be granted, and in the meantime she was enjoined from prosecuting the suit at law.    To this petition Camilla D. Nicholson, Jr., the committee, filed a demurrer.    The Court sustained the demurrer and dismissed the petition, and from this order Camilla D. Nicholson and the Supreme Council of the Royal Arcanum appealed.

The main and important question presented by the appeal is this:  Do the reasons assigned in the third paragraph of the petitition, which has been hereinbefore transcribed in full, constitute sufficient ground for setting aside the inquisition and return, and the order of confirmation passed thereon?   So far as we have been able to discover this precise question has not heretofore been passed upon by this Court, but upon general principles of law and well considered cases in other jurisdictions it would seem to be simple and free from difficulty.  It is difficult to over-estimate the gravity and seriousness of the consequences to the citizen which necessarily flow from an adjudication declaring him to be *non compos mentis.*   He is divested of his property, and may be restrained of his liberty, and incarcerated in an insane asylum.   To assert that this can be done, under the general principles of American law, without notice, or opportunity to be be heard, is shocking to one's sense of justice and humanity.   No such general rule of procedure can be recognized by the American Courts.   On the contrary the well considered cases, where the question has

arisen, have been uniform in holding that the person proceeded against must have reasonable notice of the time and place of taking the inquisition, and an opportunity to attend and make his defence. This is the general rule, and can only be departed from in such exceptional cases as shall be hereafter mentioned.

In 16 *Am. & Eng. Ency. of Law*, p. 567, it is stated that "where, as in England, a traverse of the inquisition is deemed a matter of right, it seems that a failure to serve notice on the alleged lunatic does not invalidate the proceeding. But in the United States it is generally held that a person against whom a commission of lunacy is issued is entitled to reasonable notice of the time and place of the inquisition, and has a right to be present and contest the proceeding." In *Chase* v. *Hathaway*, 14 Mass. 222, the appellant was found by a jury to be *non compos mentis*, the inquisition was confirmed, and the appellee was appointed guardian of the person and estate of the alleged lunatic, who filed a motion to quash the proceeding, and assigned, among other reasons, the following: 2nd. "That he had no notice of the time and place, when and where the said select-men made their pretended inquisition and adjudication. 3rd. That notice was not given him that any representation, or adjudication was exhibited against him; or notice that any decree would be made by the Court affecting his rights, and that he was divested of his liberty and property, without any opportunity afforded him of being heard upon the subject."

In passing upon these grounds of exception the Court say: "There being no provision in the statute for a notice to the party who is alleged to be incompetent by reason of insanity to manage his estate, it seems that the Judge of Probate did not think such notice essential to the proceedings. But we are of opinion that, notwithstanding the silence of the statute, no decree of a Probate Court so materially affecting the right of property and the person can be valid unless the party to be affected has an opportunity to be heard in defense of his rights." "It is a fundamental principle of justice, essential to

every free government, that every citizen shall be maintained in the enjoyment of his liberty and property," unless he has forfeited them by the standing laws of the community and has an opportunity to answer such charges as according to those laws, will justify a forfeiture, or suspension of them. And whenever the Legislature has provided that, on account of crime, or misfortune, the public safety or convenince demands a suspension of these essential rights of the individual and has provided a judicial process, by which the facts shall be ascertained, it is to be understood as required that the tribunal, to which is committed the duty of inquiring and determining shall give opportunity to the subject to be heard in support of his innocence, or his capacity. It has been intimated that notice to an insane person would be of no avail, because he would be incapable of deriving advantage from it. But the question upon which the whole proceeding turns, is, whether he is insane, for the presumption of law is that every man is of sound mind until the contrary is proved. And it being possible that interested relatives might falsely suggest insanity, with a view to deprive the party of the power of disposing of his estate, that very possibility should be guarded against by personal notice to him when practicable, that he may expose himself to the view of the Judge, and prove by his conduct and actions the falsity of the charge. * * * Indeed, it would seem strange, that the whole estate of the citizen might be taken from him, and committed to others, and his personal liberty be restrained, upon an *exparte* proceeding, without notic of the pendency of a complaint, upon a suggestion of lunacy, or other defect of understanding, while the depriving him of the minutest portion of that property, or the slightest detention of his person, would be illegal upon a charge of crime, or a breach of civil contract, unless all the formalities of the trial were secured to him, by the forms of process and the regular execution of it."

In the *Matter of Van Auken*, 10 N. J. Eq. 190, where a motion was made to set aside the inquisition because there was no sufficient notice given to the alleged lunatic of the time

and place of executing the writ, the Court said: "The alleged lunatic has a right to be present at the examination of the commission, and make his defense by himself or counsel, and to examine the witnesses. The effect of the finding against him is to deprive him of the control of his property and of his personal liberty. Such consequences cannot follow, except upon the verdict of the jury; and no such verdict should be permitted to pass against any man without affording him an opportunity of defending himself, except in extreme cases when such notice would be nugatory. In cases of confirmed and dangerous madness it may be dispensed with, but then only by the express order of Court."

In *Holman* v. *Holman*, 80 Me. 139, which was an appeal by the plaintiff from the decision of the lower Court refusing to grant his motion to dismiss the petition under which he had been placed under guardianship, the Court said: "It is the opinion of the Court that the defendant should have had notice of the inquisition by the selectmen. It is true that there is no express statute provision requiring such notice. But it is a well settled rule of common law that when an adjudication is to be made which would seriously affect the rights of a person, he would be notified and have an opportunity to be heard."

In *Eddy* v. *The People*, 15 Ill. 386, which was an appeal from an order denying a motion for a rehearing filed in a cause wherein Ira B. Eddy had been declared a lunatic. In disposing of the appeal the Court said: "We shall confine our discussion in this case to the question of notice. The statute provides that whenever a lunatic has any estate, the Judge of the Circuit Court of the county in which such lunatic lives, shall, on the application of any creditor, or relative of the lunatic, order a jury to be summoned to inquire whether such person be a lunatic, and if the jury shall so find, the Judge shall appoint a conservator. The statute is silent upon the subject of notice, and the question is, whether it is regular to proceed without notice to the supposed lunatic. We are clearly of opinion that upon the general principles of law, the

supposed lunatic is entitled to reasonable notice.   If he be in fact a lunatic, the notice would be undoubtedly useless; but that is the very question to be tried, and until a regular trial is had and inquest made, the presumption is in favor of sanity. The consequences resulting from the determination are of the most momentous character to the lunatic, both personally and pecuniarily, and so long as it is possible that a sane person might, upon an *ex parte* examination, be found to be insane, every principle of justice and right requires that he should have notice and be allowed to make manifest his sanity, and to refute and explain the evidence tending to prove the reverse. The idea is too monstrous to be tolerated for a moment, that the Legislature ever intended to establish a rule by which secret proceedings might be instituted against any member of the community, by any party who might be interested to shut him up in a mad house, by which he might be divested of his property and his liberty, without an opportunity of a struggle on his part.   Should such a principle be sustained, the most sane man in the State is liable to be surprised at any moment by finding himself bereft of his property and on the way to a lunatic asylum."

There is no statute in Maryland providing for notice to the person alleged to be *non compos*, and, therefore, the authorities we have cited have a direct bearing upon the point under consideration, and are so in consonance with the dictates of the plainest justice that we are disposed to approve them, so far as they declare the general rule that the party proceeded against must be given timely notice of the proceedings, and an opportunity to be heard.   In *Alexander's Ch. Prac.*, 225, it is stated that the alleged lunatic "has a right to be present before the jury, and may take part in the examinations before them."   This presupposes notice of the proceedings, for otherwise of what avail is this right to him, or how can it be exercised, if he has no knowledge of the proceedings, or is purposely kept in ignorance of them?   It would be a mockery of justice to accord rights to a citizen, and then deny him the opportunity to assert them.

. In *Campbell's case*, 2 Bland, 217, the general rule that the person proceeded against should be produced before the jury was recognized and some of the conditions under which his presence might be dispensed with were stated. In that case Charles Campbell, of Frederick County, was confined in a hospital in Philadelphia, and the question arose with regard to the county to which the writ should be directed. Upon this question the Chancellor said: "It is, in general proper, and may, in some cases be indispensably necessary, that the person alleged to be of· unsound mind, should be brought before the jury who are convened by the Sheriff to ascertain his intellectual condition. And for that reason the writ is almost always directed to the Sheriff of the county in which the person said to be insane resides, or may at the time be placed. But if he is out of the State at the time, or it is impracticable, or, as in this instance, it would be attended by great inconvenience and injury to the afflicted person to have him brought before a jury, his actual presence may be dispensed with, and the writ may be directed to the Sheriff of the county in which he last actually resided, or in which the principal part of his estate lies."

We accordingly decide that in the execution of the writ the person alleged to be *non compos* must have reasonable notice of the proceedings and opportunity afforded to him to contest the truth of the allegations in the petition, and must be produced before the jury, unless the Court for sufficient reasons shown, similar to those stated in *Campbell's case, supra,* and *Van Aüken's case, supra,* should dispense with notice and personal attendance.

The allegations of the petition to quash, which was a proper method of procedure (*Alexander's Ch. Prac.,* 226–7) having been admitted by the demurrer, the inquisition, return, and the order of confirmation should for the reasons stated, have been set aside, and a new jury summoned and a new inquisition taken. As to the contention that the Court had no power to grant the relief prayed for, because the order of confirmation had become enrolled before the petition to quash was filed, it

is sufficient to say that the case of *Straus* v. *Rost*, 67 Md. 470, and the recent case of *Primrose* v. *Wright*, decided November 16th, 1905, 102 Md. 105, settle that question in favor of the Court's jurisdiction.

> *Order · reversed and cause remanded with costs to the appellants above and below.*