## META PACKARD ET AL. *vs.* HENRY A. ULRICH, COMMITTEE, ET AL.

*Adjudication of Lunacy under Inquisition not Open to Collateral Attack.*

An adjudication under a writ *de lunatico inquirendo* that a certain person is insane and the appointment of a committee of his person and property is not open to collateral attack on the ground that the lunatic was not summoned and did not appear at the execution of the writ.

A sale of the property of one adjudged a lunatic by his committee, under an order of Court, is valid, although it does not appear that the lunatic had notice of the taking of the inquisition.

*Decided June 25th, 1907.*

Appeal from the Circuit Court of Baltimore City (ELLIOTT, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, and SCHMUCKER, JJ.

*A. Morris Tyson* and *Edward H. Sappington* (with whom were *Joseph Packard, Henry Duffy* and *A. de R. Sappington* on the brief), for the appellants.

*Paul Johannsen* (with whom were *Messrs. Ulrich* and *Dean* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

On January 25th, 1898, Charles C. A. Osterbole filed a petition in the Circuit Court of Baltimore City alleging that his niece, Mrs. Annie Vonderheide, a widow of that city, had been for several years of unsound mind and a lunatic, without lucid intervals, and had been recently sent upon the certificates of two physicians to the "Richard Gundry Home" near Baltimore City ; that she was possessed of leasehold and personal estate of the value of about ten thousand dollars, but was incapable of the management of her property or the government

of herself, and praying that a writ *de lunatico* be issued to inquire into her lunacy. This petition was supported by the affidavit of the petitioner and by the affidavits of Dr. Chas. W. Hartweg and Dr. Hampson H. Beidler.

The writ was issued in the usual form on the same day, and on January 26th, 1898, an inquisition was taken and returned by which the said Annie Vonderheide was found to be of unsound mind, and a lunatic without lucid intervals, and not capable of the government of herself, or the management of her estate, and on the following day this inquisition was confirmed, and Charles E. Shanahan was appointed as committee of her person and estate.

He continued in the discharge of his duties as such committee until his death in the fall of 1903, when Henry A. Ulrich was appointed as committee in the place of said Shanahan, which position he still occupies.

It appears from the proceedings that sometime in May, 1904, said committee, after consultation with physicians, and upon their advice, permitted the said Annie Vonderheide to make a journey to her native place in Germany, in company with her brother Otto Zatsch, a resident of that country, who came to Baltimore to see his sister ; that she is still in Germany with marked improvement in her condition and with some hope of ultimate recovery ; that said Otto Zatsch has been appointed by the Grand Ducal Official Court of the city of Stadt Langsfeld, committee of the person and estate of said Annie Vonderheide, and has there given good and sufficient security for the faithful performance of the duties of such committee, and that application has been made to the Circuit Court of Baltimore City for the sale and conversion of all the estate of said lunatic into money and its payment and delivery under the order of the said Circuit Court to said Otto Zatsch, as committee, subject to the order and direction of said Grand Ducal Court of the city of Stadt Langfeld.

It further appears that pending this application for the transfer of said estate to said Otto Zatsch as committee in Germany, a decree was passed by the Circuit Court for Baltimore City

directing the said Henry A. Ulrich, committee as aforesaid, to sell the property of said lunatic, consisting of two annual ground rents of $54 each, and seven annual ground rents of $50 each, all on North Montford avenue, also leasehold property, No. 953 Druid Hill avenue, and a life estate in leasehold property No. 918 Druid Hill avenue, and said committee subsequently reported to said Court the sale under said decree, of an annual ground rent of $54 upon No. 1700 North Montford avenue, to Henry Duffy for $886.64 ; three annual ground rents of $50 each, upon Nos. 1702, 1704 and 1706 North Montford avenue to Henry Duffy for $820.96 each ; an annual ground rent of $54 upon No. 1701 North Montford avenue, to Catherine E. Tyson for $886.64 ; four annual ground rents of $50 each upon Nos. 1703, 1708, 1710 and 1712 North Montford avenue, to Catherine E. Tyson, Emily J. Smith, Mary H. Smith, and Meta Packard, respectively, at $820.96 each ; a life estate in leasehold No. 918 Druid Hill avenue, to Jacob M. Kahn for $350 ; and leasehold No. 953 Druid Hill avenue to Benjamin Voloscher for $825.

These sales were all ratified and confirmed December 13th, 1906, but on January 26th, 1907, the order of ratification was rescinded upon the petitions of the several purchasers above mentioned, with leave to them to file exceptions to said sales within ten days from that date, and exceptions were accordingly filed. The ground of these several exceptions is, that it nowhere appears from the proceedings in which said Annie Vonderheide was found to be a lunatic, that she was summoned to appear before the jury, nor that she was notified of said proceeding, nor that she did in fact appear before said jury, either in person or by solicitor, nor that she ever had any knowledge or notice of said proceeding, nor that the Court by its order dispensed with such notice to said lunatic, or her personal attendance before said jury; that it does not appear that said lunatic had any notice of the substitution of said Ulrich as committee in place of said Shanahan, nor that she was ever summoned to answer or in any manner notified of the petition for sale of said ground rents, or of any of the proceed-

ings thereunder, and the exceptions allege that for these reasons said proceedings are void from the beginning because the Court had no jurisdiction in the premises, and the committee can convey no title to the property sold to the exceptants.

Henry A. Ulrich answered the petitions for the rescission of the order ratifying said sales, admitting his inability to show that the said lunatic had notice of the inquisition, or that she attended the same, or that her presence was dispensed with by order of the Court, but asserted that he personally notified her of his substitution as her committee in place of said Shanahan, and that she was then rational in manner and conversation and expressed her great satisfaction at the change, as he was able to converse with her in German which was the only language she could speak or understand, and said Shananan had no knowledge of that language. It was agreed by counsel that the form of the writ *de lunatico inquirendo* in this case, and the form of the inquisition returned by the jury thereunder, was in conformity with the practice for more than thirty years past in the equity Courts of Baltimore City; that Wm. R. Brewer would testify that he had been connected with the Clerk's office of the Circuit Court of Baltimore City for over 39 years; that he was familiar with the chancery practice of said Courts, and that in proceedings *de lunatico inquirendo* it has never been the practice to summon the alleged lunatic or to notify him of the proceedings.

The Circuit Court, upon hearing, overruled these exceptions and ratified these sales, and from that order the purchasers have appealed.

The present case, grows out of the recent case of the *Royal Arcanum* v. *Camilla D. Nicholson, Jr.*, 104 Md. 472, decided by this Court December 19th, 1906, and which these exceptants contend determines that in no case can a valid sale of any property of a lunatic be made, unless the alleged lunatic was notified by summons, or appeared, or notice, or his presence was dispensed with by order of the Court. A careful examination of that case, however, makes it apparent that the Court did not intend to go beyond what was actually necessary to

the decision of the precise case before it, and that the present case is not necessarily concluded by that decision.   There, *a direct application by the alleged lunatic* was made, praying "that the said writ *de lunatico inquirendo*" hitherto issued in these proceedings, and the said inquisition held by the Sheriff of Baltimore City aforesaid, and the return of the said writ be quashed, and that the order confirming the said inquisition may be set aside, and that a new writ *de lunatico inquirendo* may be issued, &c."

Here, there is no intervention by the alleged lunatic, no *direct attack* upon the proceedings by any one *in her behalf*, or by any one having *direct* interest in the prior proceedings. The difference between these two cases is therefore obvious, and the only inquiry before us, is whether a collateral attack such as is here made, is necessarily within the reason and design of the former decision, and if not, then how the matter should be determined upon principle, and with reference to adjudicated cases.

In *Buswell on Insanity*, sec. 56, the author says: "It has been held that proceedings in lunacy had without notice to the party alleged to be insane are void so as to render absolutely null decrees and orders passed in the cause, or by virtue of such proceedings.   But the better opinion seems to be, the Court having jurisdiction of the subject matter of the proceedings, that want of notice will merely have the effect to render the proceedings *voidable by the party himself*, but not void as to other parties.   Nor can advantage of want of notice be taken in collateral proceedings."

The law is so stated also in *Van Fleet on Collateral Attack*. In sec. 413 the author says: "An insanity inquest held without notice is not void *when collaterally attacked*." And in section 399, it is said: "In all proceedings where the Court has the control and possession of property, holding it in trust for the rightful owner, such as proceedings in administration, admiralty, attachment, bankruptcy and insolvency, and seizures for breach of the criminal, penal, or revenue laws, the seizure of the property gives jurisdiction, and notice is a mere matter of

courtesy. * * *. So in regard to notices to infants and
*non compotes*." In quoting the above passage we are not to
be understood as approving the statement that the mere seiz-
ure of property in the cases therein stated dispenses with no-
tice to the owner, or that infants are to be classed, as re-
spects notice, with *non compotes*. We quote the passage as
only applicable to the case now before us of a collateral at-
tack upon an inquisition in lunacy.

"In cases of adjudication of insanity and the appointment of
a guardian all necessary prior steps are presumed. So where
the record in such a cause was silent as to service, it was pre-
sumed. *In a collateral case*, the record was silent as to
whether the defendant had been produced in Court, or his
presence dispensed with, and it was held that the presumption
was that he was produced or that the Court dispensed with his
production." And the text is fully sustained by the case of
*Ockendon* v. *Barnes*, 43 Iowa, 616.

The cases cited by this Court in *Royal Arcanum* v. *Nichol-
son, supra*, as sustaining the conclusion there reached, were
*Chase* v. *Hathaway*, 14 Mass. 222; *Van Aukens case*, 10 N.
J. Eq. 190; *Holman* v. *Holman*, 80 Me. 139, and *Eddy* v. *Peo-
ple*, 15 Ill. 386, in all of which the Court was careful to state,
the alleged lunatic directly attacked the proceeding for want
of notice, and sought to set aside the inquisition.

The case of *Eddy* v. *The People*, was relied upon and con-
sidered in the latter case of *Dodge* v. *Cole*, 97 Ill. 351, which
was the case of a collateral attack upon the validity of an in-
quisition in lunacy. The proceeding was in chancery by the
appellant as conservator of Maria Sharp, a lunatic, to set aside
and declare void certain conveyances of land belonging to her
and made by a former conservator. She was adjudged in-
sane without notice, and Lisk was appointed her conservator.
He subsequently sold the land under an order of Court, and
was afterwards discharged, her estate being exhausted in her
support. Still later Dodge was appointed her conservator,
and he took the proceeding mentioned, contending that the
sale was void because it did not appear there was personal

service on her in the lunacy proceedings, and *Eddy* v. *The People*, was relied on as establishing that contention. The Court dismissed the proceeding, saying, "It is sufficient to say with respect to this question that we are of opinion that the validity of Lisk's appointment as conservator cannot be inquired into in a collateral proceeding like the present. It is the settled doctrine of this Court that the regularity or validity of an administrator's appointment cannot be inquired into collaterally, and on principle we can see no difference in the case of a conservator and an administrator." And the Court cited in spport of its decision two Massachusetts cases of administrators, *Bassett* v. *Crafts*, 129 Mass. 513, and *McKim* v. *Doane*, 137 Mass. 195.

The doctrine of *Dodge* v. *Coale*, appears to be well sustained, and is supported by numerous decisions in other States.

In *Kimball* v. *Fisk*, 39 N. H. 110, it was held that proceedings of Courts of probate in relation to the appointment of guardians of insane persons are not void, however irregular or erroneous, if the Court has jurisdiction of the subject matter of the proceeding, and that want of notice to the party renders the proceeding voidable by parties injured, but not void as to everybody. The Court said, "Want of jurisdiction of the subject matter renders the proceedings void. But the Court had jurisdiction of the subject matter. Want of jurisdiction of the person of the party renders the proceedings voidable, not void. They may be avoided by those who are injured or who have just cause to complain, until they have been confirmed."

In *Betheq* v. *McLennon*, 1 Iredell, 413, the action was detinue for slaves. The defendant claimed under a deed from plaintiff's intestate. Plaintiff claimed his intestate was insane when the deed was made, and offered an inquisition antedating the deed. This was objected to as irregular and void on the ground that the writ issued without a previous affidavit, and that it did not appear the alleged lunatic was present before the inquest, or was notified to attend the inquest when taking the inquisition, but the objection was overruled and the inquisition was admitted as *prima facie* evidence of insanity, but

only as *prima facie*, and subject to defendants right to contro-
vert the finding of the jury of inquisition.    The plaintiff had a
verdict and on appeal the judgment was affirmed.    The Court
said: "It is true the lunatic is entitled to be present before the
jury, and if he is denied that right, such denial would be a suffic-
ient cause for setting aside the inquisition, but it cannot be that
these alleged irregularities will so entirely avoid the inquisition
that all persons may treat it as *ipso facto* null.   The Court
had jurisdiction to issue the writ; the jury had authority to
make the inquiry, and their inquisition, returned and con-
firmed by the Court, must be regarded with the respect due to
such solemn proceedings until it be reversed or superseded."
The opinion was concurred in by CHIEF JUSTICE RUFFIN, and
JUSTICE GASTON two of the most eminent Judges that ever sat
in the Supreme Court of North Carolina.

*Rogers* v. *Walker*, 6 Pa. St. 373, was an action of ejectment
by Mary Walker a lunatic by her committee.   The defendant
offered an inquisition showing her lunacy, which was objected
for want of notice to her.   The objection was overruled, and
on appeal, CHIEF JUSTICE GIBSON said: "The general principle
is that an inquisition of lunacy is *prima facie* evidence against
third persons; the exception attempted is that proof was not
made before the inquest that notice of the execution of the
commission had been served pursuant to the statute on the
plaintiff or any of her friends.    But the defect cannot be urged
to reverse the proceeding collaterally.   The inquisition might
perhaps have been quashed for it on motion to the Court
from which the commission issued, but as a traverse was taken
and found against the traverser it remained in force and could
not be treated as a nullity."   That case was followed in
*Willis* v. *Willis*, 12 Pa. St. 161, where the suit was upon a
note of the alleged lunatic against his administrator who offered
in evidence an inquisition antedating the note, but where the
inquisition was held without notice to the alleged lunatic.

In *Dutcher* v. *Hill*, 29 Mo. 271, Dutcher brought ejectment
against Hill who claimed title under a deed from plaintiff's
committee in lunacy who sold the land under an order of

Court. Subsequent to this sale plaintiff was declared of sound mind and was restored to the control of his property before this suit was brought. The statute was silent as to notice to the lunatic of the inquisition. The Court said, "After considerable examination we have not been able to find a single case in which it has been held that the validity of a sale of land of a supposed lunatic, made by his guardian, can be attacked in a collateral proceeding on the ground of the want of notice of taking the inquisition by which the supposed lunatic was found to be such. The cases of *Willis* v. *Willis*, 12 Pa. St. 159, and *Bethea* v. *McLennon*, 1 Iredell, 413, maintain on the contrary that the want of such notice cannot be taken advantage of in a collateral action, and these cases do not appear to have been determined with reference to the local laws of those States, but on general principles."

In approving these cases as we do, and adopting their reasoning as to the case we have to decide, we do not withdraw or qualify anything said in *Royal Arcanum* v. *Nicholson, supra,* as applicable to the case there decided; and we repeat that it is plain from the language of the opinion in that case and the careful statement of the facts in the cases there cited, that it was the purpose not to prejudge or anticipate the case which is here decided. We concur in the conclusion of the learned Judge of the Circuit Court, and will affirm the decree.

*Decree affirmed, with costs to the appellee.*