## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed September 2, 1908.

See 104 Md. 472.

IN THE MATTER OF CAMILLA D. NICHOLSON, LUNATIC.

*A. C. Trippe & Son* for petitioner.
*Richard H. Pleasants* for committee.

HEUISLER, J.—

On the 15th day of November, 1905, Camilla D. Nicholson, Jr., filed her petition "in the matter of Camilla D. Nicholson, lunatic," in the Circuit Court No. 2 of Baltimore City, Docket A. 14— Folio 395—1905, and which hereafter will be referred to as the "First Case," praying that a writ "de lunatico inquirendo," be issued to inquire into the lunacy of a certain Camilla D. Nicholson, which was accordingly done; and on the first day of December, 1905, the return of the inquisition was confirmed by order of court and the said petitioner, Camilla D. Nicholson, Jr., was appointed Committee of the person and estate of the said lunatic.

On the 20th day of April, 1906, the Supreme Council of the Royal Arcanum and Camilla D. Nicholson filed their petition, in that case, alleging that the appointment of Camilla D. Nicholson, Jr., as Committee, "was defective and

illegal on the face of the inquisition and in the manner in which the writ was executed for the reason that the said Camilla D. Nicholson, who, was at the time of the execution of said writ within the State of Maryland, had no opportunity presented her to appear in person before said Jury, and had no notice of the time and place of the inquisition, and did not appear before the said Jury, etc., and praying that the said writ and the inquisition and return thereof made by the Sheriff might be quashed, and the order confirming said inquisition set aside and a new writ issued. To this petition a demurrer was interposed by the said Camilla D. Nicholson, Jr., Committee, and on the 8th day of June, 1906, by order of court, the demurrer was sustained and the petition dismissed. From this order an appeal was entered to the Court of Appeals of Maryland, and on the 19th day of December, 1906, it was adjudged and ordered by the said Court of Appeals on said appeal that "the order of the Circuit Court No. 2 of Baltimore City passed in this cause on the 8th day of June, in the year 1906, be and the same is hereby reversed and the cause remanded with costs to the appellants above and below;" and on the 5th day of March, 1907, an order was passed in the "First Case," annulling and setting aside the inquisition of lunacy, return and confirmation thereof, in accordance with the opinion and decree of the Court of Appeals of Maryland. No further proceedings were thereupon had in the "First Case," but on the 12th day of April, 1907, an independent proceeding was begun in the Circuit Court No. 2 of Baltimore City (the same being the case now under consideration, A. 16-107-1907) by the filing of another petition, with a medical certificate attached, praying for a writ *de lunatico inquirendo* to inquire into the lunacy of Camilla D. Nicholson and also praying for the *writ of subpoena* against the said Camilla D. Nicholson, and, after the issuance of said writs, the alleged lunatic was returned duly summoned by "reading the summons to Camilla D. Nicholson, alleged lunatic, and a copy of the process left with the person having the care of the alleged lunatic." On the 14th day of May, 1907, the said return and proceedings were confirmed by order of court and Camilla D. Nicholson appointed committee. On the 27th day of June, 1907, the Supreme Council of the Royal Arcanum and Camilla D. Nicholson filed their petition in this second case praying that "the second case be dismissed and all proceedings therein be set aside and quashed," because further proceedings should have been taken in the "First Case" and not by new and independent proceedings in a "Second Case." This petition was fully answered on July 6, 1907, in which answer the committee alleged that she was unable to further proceed in the "First Case"—because the Court of Appeals had practically dismissed the "First Case" and the second and independent proceeding was necessary. The second case rested at this point for a while, and the Committee went back to the "First Case," and on the 11th day of February, 1908, an order was prepared and signed ordering and decreeing that the *two cases be consolidated*, unless cause to the contrary be shown by the Supreme Council of the Royal Arcanum on or before February 28, 1908, and on the 24th day of February, 1908, an answer to said order was filed by the Supreme Council of the Royal Arcanum showing cause why the cases should not be consolidated. No further proceeding was had in *either case* until June 1, 1908, when a petition was filed in the "Second Case" by the Supreme Council of the Royal Arcanum and Camilla D. Nicholson to quash the inquisition, return and order of confirmation, in that case, for the reasons:

First. "That the said Camilla D. Nicholson *did not appear* before the jury of inquisition that found her to be insane;" and

Second. "That *no sufficient reasons*, and, in fact, no reasons whatever *were shown to the court* why said Camilla D. Nicholson was not present at the inquisition so vitally affecting her personal liberty and estate."

The committee answering this petition, on the same day, *admits* the allegations of the first paragraph of the petition, i. e., that the said alleged lunatic *did not appear* before the jury of inquisition, and claims that the lunatic was duly and legally summoned, and denies the necessity of showing any reasons whatever why the lunatic was not present. The petition to quash the inquisition, return and order of confirmation, in this second case, and the

answer thereto; and the petition to dismiss the bill in this second case, and the answer thereto were argued by the respective counsel and submitted for final decree. The attention of the court was directed, in the argument, to the recent case of Packard vs. Ulrich (to be reported in 106 Md. 246), wherein our Court of Appeals has held that proceedings such as those now under consideration cannot be collaterally attacked. The petition filed by the Supreme Council of the Royal Arcanum to quash the lunacy proceedings is not a collateral attack. "A motion to quash may be made by the supposed lunatic, or by any of his near relatives on his behalf, or by his grantee or *any other person whose interests may be affected by the finding of the jury.*"

Alexander's Ch. Practice, 226.

The interests of that petitioner, who is called upon to pay out a sum of money to the Committee appointed under certain proceedings, are certainly affected by the finding of the lunacy jury, for if the proceedings are not legally correct the finding of the jury is not legally safe. The Court of Maryland, in the case of Royal Arcanum et al. vs. Nicholson, 104 Md. 472, (this being the appeal in the "First Case"), say at page 484: "We accordingly decide that in the execution of the writ the person alleged to be *non compos* must have reasonable notice of the proceedings and opportunity afforded to him to contest the truth of the allegations in the petition, and must be produced before the jury unless the court, for sufficient reasons shown, similar to those stated in Campbell's case, supra, and Van Aukins case, supra, should dispense with notice and personal attendance. This language is clear and unmistakable, and positively asserts the necessity of *two things* in the execution of the writ therein referred to, viz: First, *personal notice or summons*, and second, *personal attendance before the jury of inquisition*, unless the attendance is excused or dispensed with by due order of court. In the case under consideration the Committee admits that the alleged lunatic *did not appear* before the jury of inquisition, and denies the necessity of any explanation thereof, and there is no evidence in the case that a proper order of court was had to excuse such non-attendance. Fol-

lowing the law as announced in 104 Md. 472, supra, it inevitably follows that the proceedings herein are void and of no legal effect because of the failure of personal attendance of the alleged lunatic, Camilla D. Nicholson, before the inquisition jury without an order of court excusing or dispensing with such personal attendance. With reference to the other petition in this case filed to dismiss this "Second Case," the court is of the opinion that the prayer of that petition should be granted. Supplementary proceedings should have been taken in the "First Case." Indeed, that was the meaning of the mandate of the Court of Appeals in *remanding* the case. It directed that the "inquisition, return and order of confirmation * * * be set aside and a *new jury summoned and a new inquisition taken*," 104 Md. 484. Under the provisions of Article 5, Section 38, Maryland Code, the remand of the case meant that "further proceedings, by amendment of pleadings or further testimony, *or otherwise*, shall be necessary for determining the case upon its merits," should be had in the court from whose decision the appeal was taken. The proceedings in the second and independent case are violative of the law of this State, as previously indicated, and will be quashed and the order of confirmation annulled and set aside, and inasmuch as the "First Case" still remains open on the dockets of this Court, a new jury can be summoned therein and a new inquisition taken therein as directed by the Court of Appeals, and the "Second Case" being unnecessary, it will be dismissed. An order will be passed in accordance with this opinion.