NANCY E. MASON *et al.* Plaintiffs in Error, *vs.* SARAH L. TRUITT *et al.* Defendants in Error.

*Opinion filed December 17, 1912.*

1. EVIDENCE—*secondary evidence admitted without objection becomes a part of the case.* Where the primary proof cannot be produced and secondary evidence is admitted without objection the secondary evidence becomes part of the case and must be considered, and the fact that no proper foundation was laid for its introduction cannot be urged, on appeal, as ground for not considering the evidence.

2. SAME—*when execution and delivery of deeds is established.* In the absence of any objection to its introduction, uncontradicted secondary evidence that the holder of the legal title to land executed and delivered a warranty deed, in which his wife joined, to his son-in-law, and that the son-in-law and his wife executed and delivered a warranty deed to the wife of their former grantor, which deeds were never recorded, must be accepted as proof of such facts.

3. SAME—*it will not be presumed that a warranty deed contained a release of homestead.* Mere parol proof that the holder of the legal title to land executed and delivered a warranty deed thereto does not raise any presumption that the deed contained a release of the grantor's homestead, and if possession of the land was never delivered, it can only be held, under such proof, that the deed conveyed to the grantee the excess, if any, above the homestead estate of $1000.

4. PARTITION—*when proof of value of land at time of conveyance is necessary.* Where there is no proof that a deed to land contained a release of the homestead estate of the grantor, who never delivered possession of the land to the grantee, who subsequently deeded the land to the former's wife, proof of the value of the land at the time the conveyance was made is essential to the determination of the rights of the heirs of the wife, who died intestate, and the rights of grantor's second wife and her children.

5. SAME—*when limits and value of homestead premises must be determined as of time of partition.* If the grantor in a deed, which contains no release of homestead, continues to reside upon the land until his death without having had his homestead estate assigned to him, the limits and value of the homestead premises, in case the value of the land at the time the deed was made exceeded $1000, must be determined, in a partition proceeding, as of the time of such proceeding.

6. INFANTS—*court will protect rights of infants though guardian ad litem claims no right to relief.* The court, on its own motion, will protect the rights of infants where they are manifestly entitled to some relief, although their guardian *ad litem* may neglect to claim it in their behalf.

WRIT OF ERROR to the Circuit Court of Hardin county; the Hon. E. E. NEWLIN, Judge, presiding.

LEDBETTER & WATSON, for plaintiffs in error.

R. F. TAYLOR, and CHARLES DURFEE, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiffs in error, Nancy E. Mason and Commodore A. Okerson, children of Albert Okerson and Mary Okerson, both deceased, on July 11, 1911, filed their bill of complaint in the circuit court of Hardin county against the defendants in error, who are the remaining children and the widow of Albert Okerson, for partition of eighty acres of land in Hardin county. Albert Okerson had been married three times. By his first wife, Mary Okerson, he had six children, two of whom were the complainants and the remaining four were defendants to the bill. He had no children by his second wife. His third wife was the defendant Mary E. Okerson, and by her he had two children, both of whom are minors, who were also defendants to the bill. The original bill alleged that Mary Okerson, the mother of complainants, was at the time of her death the owner in fee of the eighty acres in question; that upon her death intestate this land descended to her six children, subject to the homestead and dower of their father, Albert Okerson, and that upon his death the estates of homestead and dower were extinguished; that the children of Mary Okerson, being the two complainants and four of the defendants, are the owners in fee, as tenants in common, of said real es-

tate, and that the widow of Albert Okerson and the issue of his third marriage have no right, title or interest therein. Mary E. Okerson and her minor children, by their guardian *ad litem,* answered the bill, denying the allegations thereof and setting up the Statute of Limitations. They also filed a cross-bill, alleging that Albert Okerson was at the time of his death, on December 8, 1903, the owner in fee of the eighty acres in question; that he died intestate, leaving him surviving his widow and her two minor children and the six children by his first wife as his only heirs; that Albert Okerson derived title to the premises by patent from the United States; that the six children of Albert Okerson by his first wife claim some interest in the premises other than that set out in the cross-bill, but that if they ever had any such interest the same has been barred by the Statute of Limitations; that Albert Okerson, about January, 1855, under title evidenced by patent from the United States, went into the actual, open, adverse and exclusive possession of the premises as a homestead and continued in such possession until his death, in 1903, paying all taxes assessed thereon, and that since his death his widow and minor children have continued such possession by residence thereon. The prayer of the cross-bill was for partition of the premises among the eight children of Albert Okerson, subject to the homestead and dower of Mary E. Okerson, his widow. The complainants in the original bill answered the cross-bill, denying the material allegations thereof. Replications were filed by the complainants and cross-complainants, and the cause proceeded to a hearing before the court, which resulted in a decree ordering partition of the premises in accordance with the rights of the parties as set forth in the cross-bill. The record has been brought here by writ of error.

The facts disclosed by the evidence are as follows: On May 1, 1850, Albert Okerson obtained from the United States a patent to the eighty acres in question. Soon there-

after he entered into possession of the premises and continued to reside thereon with his family until his death, in 1903. During all this period the record title stood in his name. After his death his widow, Mary E. Okerson, and his two minor children by his last marriage, continued to reside on the land, and were residing thereon when the original bill was filed herein, on July 11, 1911. The evidence further shows, without contradiction, that some time during the year 1883 or 1884 Albert Okerson and his first wife, Mary Okerson, executed and delivered a warranty deed conveying the premises in question to their son-in-law, Joseph Mason, and that about two years later Joseph Mason and his wife executed and delivered a warranty deed conveying the same premises to the said Mary Okerson; that neither of these deeds was ever recorded and that none of the parties to this suit could produce them upon the trial. Thereafter, about the year 1887, Mary Okerson died, and Albert Okerson thereafter continued to reside upon the premises until his death, in 1903. Soon after the death of Albert Okerson, his widow, Mary E. Okerson, called upon the complainants and asked them whether they would permit her to remain on the premises. They told her they wanted her to stay on the farm and raise her two children, and that all they asked of her was that she pay all taxes assessed against the land.

The evidence concerning the execution and delivery of the deed from Albert Okerson and wife to Joseph Mason and the deed from Joseph Mason and wife to Mary Okerson consisted of the testimony of witnesses, one of whom, it was admitted, if present, would testify that he was present when these deeds were executed and delivered by the respective grantors, and others testified to statements made to them by Albert Okerson during his lifetime, tending to show, first, that he had sold the land to Joseph Mason, and second, that Mary Okerson, his wife, afterwards obtained

the title from Joseph Mason. There is nothing in the record tending to contradict this testimony.

The principal contentions of defendants in error in support of the decree are, first, that no foundation was laid for the admission of secondary evidence concerning the execution and delivery of these deeds; second, that the evidence is not sufficient to sustain a finding that any such deeds were ever executed and delivered; and third, that even though said deeds were executed and delivered, as claimed by plaintiffs in error, the claim of the six children of Mary Okerson under title derived from their mother has been barred by the Statute of Limitations.

In answer to the first contention it is sufficient to say that no objection was made to the admission of the secondary evidence. When the primary proof cannot be produced and secondary evidence is admitted without objection it becomes a part of the case, and although it is not the best evidence it must be considered, as it is relevant and tends to elucidate the question in issue. By permitting it to be introduced the party against whom it is offered dispenses with the production of the superior evidence. *Pittman* v. *Gaty,* 5 Gilm. 186.

Defendants in error offer no satisfactory argument in support of the second contention. The testimony that the warranty deed to Mason was executed and delivered and the warranty deed from Mason and wife to Mary Okerson was also executed and delivered is clear and unequivocal, and it stands in this record uncontradicted. Plaintiffs in error moved for a continuance, and in support of the motion filed the affidavit of Commodore A. Okerson, stating that James M. Carr, a material witness, was so ill that he was unable to attend court or to have his deposition taken, and that the plaintiffs in error expected to prove by Carr the execution and delivery of the deed to Mason and of the deed to Mary Okerson, setting out in detail the facts expected to be proven by Carr. In order to avoid the con-

tinuance defendants in error admitted that if Carr were present he would testify to the facts set forth in the affidavit. On the hearing this affidavit was offered and is the only direct evidence in the record of the execution and delivery of those deeds. Under such circumstances a court of review, in passing upon the weight of the evidence, enjoys the same advantages as those possessed by the chancellor. This evidence is supported by the testimony of two of the witnesses called on behalf of plaintiffs in error and of two witnesses called on behalf of defendants in error, all of whom testified to statements made by Albert Okerson tending to confirm the fact that a conveyance had been made to Mason of the home farm and that the same had been re-conveyed by Mason to Mary Okerson. Under this state of the proof the decree of the circuit court is erroneous and must be reversed.

There is no merit in the contention that the right of the six children of Mary Okerson to claim title to the premises has been barred by the Statute of Limitations, as no one who has been in possession of the property since the death of Mary Okerson has held adversely to her children.

The only proof in the record as to the contents of the deed from Albert Okerson and wife to Mason is that contained in the affidavit of Commodore A. Okerson as to what was expected to be proven by the witness Carr. By that affidavit it was not disclosed whether the deed from Okerson and wife to Mason contained a release or waiver of Okerson's homestead estate, as was required by the statute in force at that time. Okerson at that time resided upon the land in question and occupied it, together with his family, as his homestead. Possession was not delivered to Mason pursuant to the execution and delivery of the deed, but, on the contrary, Okerson continued in possession of the real estate and occupied it as a homestead from that time until the time of his death, in 1903. The affidavit simply stated that it was expected to prove by

Carr that Okerson and wife executed and delivered to Mason a warranty deed conveying these premises, and it will not be presumed that this deed contained a release and waiver of Okerson's homestead estate, and the deed must be held to have conveyed only the excess, if any, above the homestead estate of $1000. Hence the fee to the homestead never vested in Mason, and as Albert Okerson remained in possession of his homestead until the time of his death, Mary Okerson and her heirs, by the deed from Mason, acquired title only to that part of the real estate, if any, in excess of the homestead estate. If at the time of the conveyance to Mason the whole of the real estate was not worth to exceed $1000, the deed to Mason conveyed nothing and was void, in which event the decree of the circuit court in ordering partition among all the children of Albert Okerson was correct. But there is no proof whatever of the value of this land at any time, and a correct determination of the interests of the parties cannot be had until proof of the value of the land at the time of the conveyance to Mason is made. If at the time of that conveyance the value of the land was in excess of $1000, Albert Okerson then retained a homestead estate and the excess passed to Mason. An allotment became necessary to define the limits of Okerson's homestead estate and he had the right at any time during his lifetime to have his homestead assigned, in which event the value of the estate would have been determined as of the time of the assignment and not as of the time of the transfer to Mason. (*Garwood v. Garwood,* 244 Ill. 580.) Okerson having failed to have his homestead assigned to him during his lifetime, the limits of the homestead estate and the value of the same, in case the value of the land at the time of the deed to Mason exceeded $1000, must be determined in this proceeding as of the present time.

As the decree is palpably against the uncontradicted testimony of Carr it must be reversed, but in order to

properly protect the rights of the minor defendants and to
correctly determine their interests in the real estate it will
be necessary to require proof of the value of the land at
the time of the conveyance to Mason.  The court on its
own motion will protect the rights of infants where they
are manifestly entitled to some relief, although their guard-
ian *ad litem* may neglect to claim it in their behalf.  *Stark
v. Brown,* 101 Ill. 395.

The decree of the circuit court is reversed and the cause
is remanded, with directions to require proof to be made
of the value of the land sought to be partitioned as of the
time of the conveyance from Albert Okerson and wife to
Mason, in 1884, and to enter a decree, based upon the
proof thus completed, which shall not be inconsistent with
the views herein expressed.

*Reversed and remanded, with directions.*