## Elizabeth Severy (nee McDougall) and Ernest Severy, Defendants in Error, v. Charles G. McDougall et al., Plaintiffs in Error.

### Gen. No. 5,830.

1. APPEAL AND ERROR, § 395*—*when objections to master's report not saved.* A party will not be heard on review to make objections to the master's report which he did not bring to the attention of the trial court.

2. INTEREST, § 43*—*when only legal rate may be charged.* As against their cotenants, tenants'in common with entire charge and control of the premises, receiving the rents and profits, are entitled to only legal interest on amounts paid by them to discharge incumbrances.

3. PARTITION, § 72*—*allowance for improvements.* In an action for partition and an accounting, a decree allowing defendants for certain improvements placed on the land by them on the basis of cost thereof rather than on the basis of the difference in the market value of the land because of such improvements, *held* not erroneous where there was no sufficient evidence as to the market value of the land with and without the improvements, and the allowance appeared to be equitable.

4. PARTITION, § 136*—*when order of proceedings cannot be complained of on review.* The fact that a decree of partition was entered and proceedings had thereunder before the decree for an accounting and proceedings thereunder, by which the interest of the parties in the improvements would be ascertained, cannot be complained of where such order of proceeding was expressly consented to by the party complaining.

5. APPEAL AND ERROR, § 831*—*term at which bill of exceptions must be taken.* In cases at law the bill of exceptions must be taken at the term at which the rulings excepted to were made, or within such time as the court may at that term have granted for that purpose; and this applies whether the ruling excepted to is a final and appealable order or not.

6. APPEAL AND ERROR, § 862*—*certificate of evidence.* The rule that in cases at law bill of exceptions must be taken at the term at which the rulings excepted to were made, or within such time as the court may at that term have granted for that purpose, properly applies to the filing of a certificate of evidence.

7. APPEAL AND ERROR, § 86*—*when motion for leave to file certificate of evidence properly denied.* Denial of motion to grant leave

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
    Vol. CLXXXX 13

and to extend the time to present a certificate of evidence, *held* properly denied where there is no means of preparing such certificate except to trust to the memory of some person that heard the evidence.

8. PARTITION, § 69*—*scope of accounting.* In an action between heirs for a partition and an accounting, the complainant is not entitled to a credit for money loaned to defendants.

DIBELL, J., took no part in this decision.

Error to the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER and Hon. DORRANCE DIBELL, Judges, presiding. Heard in this court at the April term, 1914. Affirmed. Opinion filed July 31, 1914. Rehearing denied October 22, 1914.

O. F. MORGAN, MORRIS & MORRIS and HOLDOM, MANIERRE & PRATT, for plaintiffs in error.

A. F. GOODYEAR and ERNEST SEVERY, for defendants in error.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

John McDougall died intestate June 9, 1877, the owner of eighty acres of farm land, his homestead, incumbered by a mortgage debt of $1,600 bearing ten per cent. interest. He left surviving his widow, Mary McDougall, and their five children, three girls and two boys, viz.: Elizabeth, Emma, Margaret and William J. and Charles G. There were some small debts and some personal property. There was no administration of his personal estate, and neither homestead nor dower was set off to the widow.

The family lived in the house on this land until about 1881, when the daughter Emma married and ceased to reside in the family, and the daughter Margaret died intestate leaving as her only heirs her mother and brothers and sisters. The daughter Elizabeth taught school for several years but made her home with the family until 1888, when she was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

married. In 1890 the two sons and the mother removed from the premises. The mother died October 2, 1908, intestate, leaving her said surviving children as her only heirs. September 30, 1909, the daughter Emma, her husband joining, conveyed to the three surviving children, Elizabeth, William and Charles, her title in the land, and assigned to them her interest in the rents and profits past, present and future. October 7, 1909, the daughter Elizabeth (Severy) filed this bill for partition making defendants her brothers William and Charles, and asking also for an accounting as to the payment of the mortgage debt and of the rents, profits, taxes and improvements, alleging that she had contributed to the payment of said items or some of them. There were other parties to the suit not necessary to mention here. Numerous pleadings were filed including a cross-bill by William and Charles, but we will hereinafter designate the complainant in the original bill, defendant in error here, as complainant, and William and Charles McDougall as defendants.

June 21, 1910, a decree of partition was entered, on the pleadings without proof, finding the title to the premises in Elizabeth, Charles and William, each an undivided third; and by consent of the parties all questions concerning the accounting were by that decree reserved to be heard at some future time, and determined with the same force and effect as though included in the partition decree. November 8, 1910, the commissioners reported the premises not susceptible of division and reported their value at $12,000. The report was approved by the court without objection, and January 14, 1911, William and Charles purchased the land for $12,400 at the master's sale, and in due course received a deed therefor. Meantime, on August 6, 1910, the court entered a decree as to the accounting, on the pleadings and proof taken in open court, in which decree the court finds the issues for the com-

plainant on the question of an accounting; finds the facts as to surviving widow and heirs, the residence of the family and the conveyance by the daughter Emma as above stated; finds that there has been rents and profits of the land and that William and Charles have received them all since the death of their father; that complainant has paid to William and Charles certain sums of money which she alleged was paid to contribute to the discharge of said mortgage and the expenses of the family; that William and Charles have paid taxes and for repairs, and claim to have paid certain sums for improvements; that the premises exceeded $1,000 in value at the time of the death of the father; that dower and homestead were never assigned; that William and Charles should account to the complainant, Elizabeth, for the rents, profits and use and benefits of said premises from the date of the death of their father to the time of taking of the account; that Elizabeth is entitled to four-fifteenths from June 9, 1877 to January 10, 1881, and to twenty-eight-ninetieths from January 10, 1881 to October 2, 1908, and to one-third from October 2, 1908 to the time of taking said account, subject to proper deductions for rents and profits, to which the widow is entitled on account of her estate of homestead, to the value of $1,000.

The court further finds that the defendants cannot be called upon to account, in this proceeding, for any personal property received which their father owned at the time of his death, and are not entitled to credit, in this accounting, for any of his debts which they have paid, except the mortgage indebtedness of $1,600, for the reason that such matters are not germane to the issues. And further finds that the complainant is not entitled to an accounting for any money loaned by her to the defendants and which was not applied by defendants to payment of said mortgage indebtedness, taxes, insurance or other expenditures for ordinary

repairs upon said land for which an accounting has been allowed.

An order of reference to the master for an accounting in accordance with the above findings followed, directing the parties to produce before him evidence in relation thereto, and directing the master to credit the defendants with the proportionate share of the complainant, of moneys expended for ordinary and reasonable repairs necessary for the preservation and use of the property,—the costs of such repairs; and to credit them with such share of improvements, if any, constructed out of their own funds, on the basis of the market value of the premises at the time of the sale without and with those improvements, provided if any such improvements were authorized by complainant, then the cost thereof shall be taken into account. There were other directions in the decree as to credits for payment by defendants of the mortgage indebtedness and other matters that will be hereafter mentioned, so far as they are questioned in the briefs.

The master proceeded to hear the parties on the accounting and, while he was so doing, William McDougall died testate February 4, 1911. By appropriate proceedings of record his brother Charles, as executor of his will, was substituted in his stead as a party to this action, and three minor children, alleged to be beneficiaries named in the will, were brought into court and a guardian *ad litem* appointed for them, who answered and actively represented them thereafter. We do not find from the abstract of record what interest these minors received under the will.

The master stated the account and prepared his report finding rents and profits received and disbursements made by defendants, which he filed, with the evidence taken by him, January 20, 1912, making extended tabulated statements as to the matters dealt with and concluding with the summary:

"Amount rent, issues and profits due complainant ...........................$4,980.25

Amount interest, taxes, mortgage, repairs,
  improvements, etc., due defendants from
  complainant ....................... 3,134.93

Balance due complainant from defendants. $1,845.32''

Before filing his report the master submitted it to
the parties, and Charles G. McDougall in his own right,
and as executor of the estate of his brother, presented
twelve objections which the guardian *ad litem* copied
and also presented in behalf of the minors. The master
heard and overruled these objections. They were al-
lowed to stand as exceptions, and so far, at least, as
the adults are concerned presented the questions of
fact, and the only questions of fact, that the court was
required to pass upon in reviewing the master's report.

In stating the account the master, as directed in the
decree, divided the time into periods, found the value
of the land at those different times and deducted
$1,000, the homestead estate value, from the value of
the land to ascertain the balance on which the heirs
were entitled to rentals. The first five objections are
each solely on the ground that the fair value of the
land during those five periods was not so much as
found by the master, but was $1,200, $1,400, $1,500,
$1,600 and $1,800 respectively, and that deducting the
$1,000 estate of homestead the master's finding of
yearly rentals was because of his overvaluation of the
land excessive. The sixth objection charges erroneous
computation of interest. The seventh charges that de-
fendants are entitled to an allowance against the com-
plainant for a full third of the amount of all payments
made by the defendants on the mortgage debt and for
repairs. (The master had allowed credits in propor-
tion to the ownership in the land at the time the pay-
ments were made.) The eighth objects that the master
did not act on that provision of the decree providing
for valuing improvements made by defendants on the
basis of increased value of the land. The ninth objects
that the master did not charge complainant a full third

of moneys paid for taxes and insurance. The tenth is a general objection that the report is vague, insufficient and incomplete. The eleventh charges that the master combined statements of improvements and repairs so that it is impossible to separate them and ascertain what the premises were worth with and without the improvements. The twelfth objection is general, that the amount found due is unjust and not warranted. The trial court on a hearing overruled the exceptions and entered a decree March 25, 1912, as recommended by the master, computing the interest on the amount found due from the defendants to the time of entering the decree. The defendant Charles McDougall, in his own right and as executor, sued out a writ of error in the Supreme Court. There being no freehold involved the cause was transferred to this court. *Severy v. McDougall,* 259 Ill. 272. Defendants employed other counsel and by leave of this court additional briefs have been filed in which alleged errors of the trial court in affirming the master's report are argued without much reference to the questions presented by the objections and exceptions to that report. It is hardly necessary to cite authorities that a party will not be heard on review to make objections to the master's report which he did not bring to the attention of the trial court. *Singer, Nimick & Co. v. Steel,* 125 Ill. 426; and *Barney v. Board Comr's of Lincoln Park,* 203 Ill. 397, are among the cases so holding.

The issues presented by objections and exceptions were: First. That the master at the different periods of years in which he stated the account of the rents chargeable to the defendants should have placed a lower value than he did on the land and should have deducted the $1,000 homestead estate value from that in getting a proportion of the entire rents to be charged to the defendants. We are of the opinion that the evidence sustains the master's valuation. The next objection, that the master erred in computing interest

on the basis assumed by him, we assume means only an error in figures. No complaint of any such error is made here. It is urged here that interest at ten per cent. should have been computed on the mortgage debt paid by the defendants. The decree did not so provide and we are of the opinion that they, as tenants in common, with entire charge and control of the premises, receiving the rents and profits thereof, were only entitled to legal interest on amounts so paid by them. The other objections all go to the supposed errors of the master in not charging the complainant a full one-third part of the aggregate amount found by the master to have been expended by defendants in repairs, improvements, etc., and in disregarding the directions in the decree as to difference in market value in the premises with and without improvements. We see no error in the master's method of computation. After the father's death complainant owned one-fifth of the land subject to the homestead right of her mother; afterwards, on the death of her sister, she owned a larger fraction; afterwards her mother died and her fractional interest was freed from the homestead deduction of $1,000; and then, just before this suit was begun, the interest of the other sister, not only in the land but also in the result of the accounting, was acquired by complainant and defendants (one-third each). We see no error in charging and crediting during each period according to the interest owned by the respective parties at the time. It is true that the master, had the proof required it, should have allowed defendants for certain improvements on the basis of the difference in the market value of the land because of such improvements, and the objections cover that question; but we are of the opinion that the master did not have before him any evidence on which he could intelligently base such an estimate, and that he therefore did not err in basing the account on the cost of improvements. There was a drainage ditch

constructed in the neighborhood during the period in question. These lands were within the drainage district and no doubt much appreciated in market value by reason of the drainage improvement making it practical to drain the land, and improving the neighborhood in which it was located. There was some evidence that the lands were nearly valueless without the improvements and very valuable with them; but it is all based on a theory that would make a building lot in a city of no value whatever before a building was placed upon it, on the ground that it was earning nothing. In such case, in the absence of any reasonable, reliable evidence as to the market value with and without improvements, justice is more nearly reached by allowing the tenant in common who erects a building, what he expended in so doing, and the master attempted to proceed on that plan. The defendants refused to state any account, and conclusions were reached in some instances without the most satisfactory basis, but we do not find that the master could reach a more satisfactory or equitable result on a rehearing.

Counsel in their argument state as objections to the master's report:

1. That it was error to allow complainant full rental without some deduction on account of the occupation by the complainant and her sister of the premises for a time.

2. That it was error for the master to charge the defendants rental on the basis of value thereof because there was no showing that defendants excluded the complainant from joint occupation of the premises with them, and under such circumstances only rentals actually received can be recovered.

3. Under circumstances last mentioned it was error for the master to charge defendants with interest on the rents.

4. The court erred in refusing to permit the defendants to set off against the rent the expenses in connec-

tion with the care and maintenance of the mother of the parties. This objection goes also to the decree for accounting.

5. The master's report is based in part on testimony of complainant as to her consenting to improvements and other matters not in denial of the testimony of the deceased defendant. It is not pointed out and we do not discover where any of these matters were brought to the attention of the trial court. It is also objected that the master in crediting the defendants with improvements, repairs, etc., deducted from the entire value of the estate $1,000 as the homestead value, and that the widow's homestead estate was not of the value of $1,000 but should have been ascertained by computing the value of her life estate in $1,000. Nothing was specifically charged to the homestead estate in the accounting. The defendants were relieved by the method pursued from accounting to complainant for profits derived year by year from that fractional part of the estate represented by $1,000. It was fair, so far as we can see, to charge them on the same basis for taxes, repairs and other current expenses; but in so far as they fail to receive credit for any permanent improvement by reason of deducting $1,000 instead of some smaller sum as the value of the homestead that should contribute to the improvement, there may have been error. It is difficult to tell with any degree of certainty what would be the result of a recomputation treating the homestead, in so far as it should contribute to permanent improvements, of less value than $1,000; and we do not find that this question was brought to the attention of the trial court. In the objections and exceptions filed the only reference to the value of the homestead is in the statement that it should have been taken by the master as $1,000 in the computation referred to in the objections.

It is urged that the matter did not allow defendants credit for improvements resulting from their labor on

the premises, but confined their allowance to expenditures of money made by them for that purpose. The account as stated did make some allowance to the defendants for their labor in making improvements, and even if the master erred in that respect neither his attention nor the attention of the court was called to the matter by objection or exception.

It is suggested that it is the duty of a court of chancery to protect the rights of infants in suits there pending, and we are not unmindful of the law that imposes that duty on the court. It is true that the court should see that the guardian *ad litem* performs his duty and that no substantial interest of minors should be lost by the guardian's failure to do so. The rule no doubt is that the court on its own motion will protect the rights of infants where they are manifestly entitled to some relief, although their guardian *ad litem* may neglect to claim it in their behalf. *Mason v. Truitt,* 257 Ill. 18. But in this case we do not know what the interest of the infants was; we simply know that they are beneficiaries named in the will of one of the defendants who died pending the accounting in this case; they may be entitled to the entire interest of the testator in the property in suit here, or it may all be required to pay his debts; the title may have been devised to them or to the executor in trust for them. Whatever their rights are they are of the same nature as those of Charles G. McDougall personally, and he, with his personal interest as an individual coinciding with his interest as executor, appeared by counsel and acted for the infants. The court also appointed a guardian *ad litem* and allowed him a fee. We assume he was a competent lawyer. It hardly seems reasonable, with the property of an infant so represented and so protected, that a chancellor should be charged with a duty to investigate an extended report of his master, covering many years and many items, for errors that could not be discovered and pointed out by the solic-

itors of the defendants or the guardian *ad litem*. Yet, if some error of a substantial nature did so occur that would result in sacrificing the interest of the minors, it is probably our duty to reverse and remand the case, to the end that the infants' interests may be protected. We have examined this record with the view to determine, not only whether the chancellor erred in passing on matters presented to him, but also to ascertain if in the matter of the accounting there was such substantial error as should require this court to remand the case to protect the interests of the infant defendants, and we are of the opinion that substantial justice has been done in the accounting and that it is not in their interest that the cost and expense of another trial. be incurred.

The principal objection urged to the decree for partition is that it was entered on the pleadings, and under the allegations on which it is based it should have provided that the part of the premises on which defendants had made improvements be set off to them, that they might in that way receive the benefit of their improvements in case of actual partition of the land. The decree did provide that the interests of the defendants might be set off to them jointly, so that had the commissioners found it practicable they could have set off to the defendants two-thirds of the land and to the complainant one-third. They reported that they could not so divide it, and we judge from the record that the land was incapable of actual division on any reasonable theory of the case. It is also said it was error to enter the decree of partition and proceed thereunder before the decree for accounting and proceedings thereunder, by which the interests of the parties in the improvements would be ascertained. The order of proceeding complained of did render it difficult, if not impossible, to make any proper decree of partition that should take into account the improvements, in directions as to the division of the land. But this order of proceeding

was expressly consented to by the defendants in their agreeing to defer the matter of accounting for a future hearing and decree. They did not object to the report of commissioners, and acquiesced in the decree of sale entered thereon and purchased the premises at the sale made thereunder. We do not regard them as now entitled to question the decree in that respect, and do not see that they have been in anyway harmed by the omission of such provision in the decree.

As to the decree on accounting: Nearly two years after it was rendered, and after the master had taken and stated an account in accordance with its terms, and the court had entered its decree based on that account, but at the same term at which the last mentioned decree was entered, the defendant Charles G. McDougall, in his own right and as executor, on June 8, 1912, moved the court for an order granting leave, and extending the time to July 1, 1912, to present a certificate of evidence on which the decree on accounting was entered. This motion was denied, and that action of the court is urged as substantial error. The decree overruling exceptions to the master's report and ordering distribution in accordance therewith was rendered by a different judge of the circuit from the one that entered the decree on accounting. It seems unreasonable and unjust that defendants should apparently acquiesce in the decree on accounting, and the principles there announced, and participate in all proceedings thereunder until a final result was reached on computations based on the directions of that decree to the master, and then for the first time raise the question whether the evidence heard by the court, in the proceedings resulting in that decree, supported the findings of fact incorporated therein. It is familiar doctrine that in cases at law the bill of exceptions must be taken at the term at which the rulings excepted to were made, or within such time as the court may at that term have granted for that purpose; and this ap-

plies whether the ruling excepted to is a final and appealable order or not. *Village of Franklin Park v. Franklin,* 228 Ill. 591; *Finch & Co. v. Zenith Furnace Co.,* 245 Ill. 586; *People v. Strauch,* 247 Ill. 220. No reason occurs to us why this rule should not apply to the filing of a certificate of evidence; but, be that as it may, it does not appear that any certificate of evidence was prepared or offered, or that the evidence was taken in shorthand. It may be that the court in denying this motion knew that there was no means of preparing a certificate of evidence except to trust to the memory of some person that heard it, and that he could not pass on such certificate aided by anything but his personal recollection as to what occurred at a prior term. If such was the condition of affairs the motion was properly denied. *Saratoga European Hotel & Restaurant Co. v. Mossler,* 76 Ill. App. 688, and authorities there cited. Presumptions must be indulged in favor of rather than against the action of the court. We are also inclined to hold, under the authority of *DeGrasse v. Gossard Co.,* 236 Ill. 73, and the cases there cited and reviewed, that the decree was final in the sense that an appeal might have been then taken; and it is only on the claim that it was not, that counsel urge error in refusing leave to file a certificate of evidence.

Having determined that the court did not err in refusing leave to file a certificate of evidence, the findings of fact in the decree on accounting cannot be questioned, as indeed they could not now be questioned here if the court had erred in so ruling. The only relief we could give would be to remand the case that an effort might be made to get a certificate of evidence in the record that would enable some court in the future to determine whether the findings were warranted. The findings in the decree are conclusive on many of the questions argued here, as, for instance, the right of the defendants to credit for support of their mother.

That was an issue presented by the pleadings, as well as an issue whether there was an agreement between the defendants and the other interested parties that they should not be charged rent in consideration of their keeping up a home for the family. Failing to get a provision in the decree in their favor on these questions, it is to be assumed no evidence was furnished to support their contentions as to those matters.

The defendant in error has assigned cross-errors: That the court erred in not allowing her credit for the payment of a part of the mortgage incumbrance; in not allowing her credit for money paid to the defendants; that the court erred in fixing rental values and costs of improvements. The master did not allow her credit for moneys of hers that went into the defendants' hands, on the theory that it was a loan and could not be taken into account in this proceeding. The evidence warranted that conclusion, and we are not disposed to disturb the findings of the master as to the other items in question. It was the somewhat familiar case of the death of the father owning a little personal property and a small farm and owning a considerable debt. The family all took hold together to earn a living and pay off the debts, with no account kept of the amount each contributed to that purpose. The mother kept house when she was able and when she was not she was aided by other members of the family. The boys did their best on the farm, and in this case they prospered exceedingly, paid the debts, improved the land, made money and the brothers purchased other lands for themselves. In such a case it is impossible to arrive at accurate results. No two competent masters in chancery would place the same valuation on each of the numerous items that they were required to find from the evidence. The master in this case may have got some items too high and some too low, but we are satisfied that he has reached as accurate a result

and as equitable a conclusion as is possible in such a case.

The decrees are affirmed.

*Affirmed.*

Mr. Justice Dibell took no part in this decision.