FEDERAL LIFE INSURANCE COMPANY OF CHICAGO
*v.* BOWER.

[No. 14,994. Filed November 8, 1935. Rehearing denied February 5, 1936. Transfer denied April 7, 1936.]

*Oscar C. Hagemier, John J. Kelly* and *Jerome F. Kutak,* for appellant.

*Claycombe & Stump* and *E. C. Gullion,* for appellee.

KIME, J.—This was an action commenced in the Marion Superior Court by Audra Bower against the Fed-

eral Life Insurance Company of Chicago, Illinois, to recover two thousand ($2,000.00) dollars on an accident insurance policy issued by said Federal Life Insurance Company on the life of Claude O. Bower, in which policy Audra Bower was named beneficiary.

Said policy of insurance was a "Farmers' Special Automobile, Travel and Pedestrian Accident Insurance Policy" and was issued in conjunction with a subscription to a newspaper known as "The Farmers' Guide." The policy agreed to pay appellee two thousand ($2,000.00) dollars in case of the accidental death of her husband resulting "directly and independently of all other causes from bodily injuries sustained through external, violent and accidental means," subject to the provisions, conditions, and limitations contained in the policy.

This policy then specified limited recovery to certain types of vehicle accidents, among which was the following coverage: "Part III. Automobile and Specified Farm Machinery Accident. (a) For loss of life, both hands or both feet, sight of both eyes or one hand or sight of one eye and one foot, sustained by the wrecking or disablement of any horse-drawn or motor driven car or motorcycle in which the insured is riding or driving or by being accidentally thrown therefrom, including accidents causing death or disability sustained under the conditions specified in this part while using or operating farm wagons, mowers, binders, plows and other farm machinery which is motor driven or horse drawn, the company will pay the sum of $2,000.00."

The complaint charged that on February 11, 1931, the insured, Claude O. Bower, was standing on a farm wagon when the horses attached to said wagon suddenly moved forward and said sudden moving and "lurching" of the wagon threw the said Claude O. Bower from the wagon to the ground with such force as to cause

two cuts and abrasions in the skin of his right hand in such a manner as to thrust violently into the skin and flesh of his right hand certain infectious germs which were carried through his hand and body, and which resulted in his death on February 18, 1931.

To appellee's complaint asking for damages of two thousand ($2,000.00) dollars under this policy, appellant filed a demurrer which questioned whether the complaint stated facts sufficient to constitute a cause of action and set out the following memorandum:

"The policy sued upon provides as follows: (Sec. A)

" 'For loss of life, . . . sustained by the wrecking or disablement of any horse drawn or motor driven car or motorcycle in which the insured is riding or driving or by being accidentally thrown therefrom, . . .' "

"The policy further provided that farm wagons shall be included under the conditions specified in this part.

"It will be noted that this provision covers injuries sustained, 'by the wrecking or disablement' of such vehicle or 'by being accidentally thrown therefrom,'

"Defendant contends that to come within this clause the insured must have been accidentally thrown from a wrecked or disabled vehicle. The complaint fails to show the wagon was wrecked or disabled, but merely alleges a sudden moving and lurching of the wagon."

This demurrer was overruled by the court.

Appellant then filed an answer in two paragraphs, the first of which was a general denial and the second was, evidently, an attempt to plead lack of notice but since it is not followed up in the propositions, points and authorities here we need not notice it further.

The cause was submitted for trial by court without the intervention of a jury. The court made a finding for the appellee upon the issues thus tendered, such finding being that appellee should have and recover from the

appellant the sum of two thousand ($2,000.00) dollars and costs of the action.

Appellant relies upon the following errors, which are duly assigned for the reversal of the judgment of the trial court: (1) the trial court erred in overruling appellant's demurrer to appellee's complaint herein and (2) the trial court erred in overruling appellant's motion for a new trial.

The motion for a new trial contained the following grounds: (1) That the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law; (3) that the court erred in overruling defendant's objection to a question propounded to the appellee, as follows: "What did your husband say to you in regard to the accident?" which question was objected to for the reason that the question called for hearsay evidence and that there was no showing that it was made in the presence of the appellant or any of its agents; (4) that the court erred in permitting the appellee, over appellant's objection, to answer the foregoing question, "He said he went where the boys had scooped feed out of the wagon and seeing they hadn't got the feed dusted out clean from the edge of the wagon, he got in the wagon and walked to the back end of the wagon and while he started to stoop over to dust the feed up, the horses started up and pitched him out of the back end of the wagon;" (5) that the court erred in refusing to strike out the answer to the above question on the ground that it was not a part of the *res gestae* and hearsay; (6) that the court erred at the close of the testimony in overruling appellant's oral motion to strike out appellee's testimony, as to what her husband had told her as to how he injured his hand; and (7) that the court erred in permitting the attending physician to testify as to what ap-

pellee's decedent told him concerning the manner in which he received the injury.

The uncontradicted evidence discloses that on the morning of February 11, 1931, the decedent was at his home on a farm in Boone county, where preparations were being made for a public sale to be held in the near future; that the decedent was assisted in these preparations by his son and a hired hand; that they had had some feed ground which was hauled to the barn lot in the wagon of a neighbor, which wagon they had borrowed for this purpose, and which borrowed wagon was drawn along side of a wagon owned by Bower, which was standing in the barn lot with the team being hitched to the borrowed wagon; that the ends of the wagons were even and the feed was being transferred from the neighbor wagon to the Bower wagon. That Bower's son and the hired hand scooped up the feed as well as they could with scoop shovels and then went into the barn to take care of some cattle. That the hired hand saw Bower come from the house and approach the wagon from which the feed had been scooped; that at that time the ends of the wagons were even. Neither the son nor the hired hand saw Bower climb into the wagon but some twenty minutes later the hired hand, upon inspecting the wagon found that it had been cleaned out more thoroughly than when they left it; and that the hired hand, Bower's son, or Mrs. Bower had not cleaned the wagon and there was no one else on the premises except Bower at the time.

Mrs. Bower testified that she saw the wagons while the feed was being transferred; that the wagons were side by side, that the ends were even, and that the team was hitched to the neighbor's wagon; that she saw her husband leave the house, where he had been helping her that morning with the work; that he came back in the house in approximately five min-

utes and held up his hand and she saw a small place where the skin was broken, but did not see another place at the base of his thumb until a moment later when she stepped over to where he was, and that she put some mercurochrome on both places; that she looked out of the window when her husband came in and saw that the wagon to which the team was hitched had been pulled up about one-half the distance of the other wagon; she asked him how he met with the injury and upon her starting to testify as to this conversation there was an objection interposed by the appellant.

The next day after he had received the injury he obtained the services of a physician, who found that there was developing a serious condition of blood poisoning. The physician was unable to check the progress of the poison, and six days after the injury Bower died.

The date of the death was February 18, 1931. On February 25, 1931, the plaintiff wrote to the insurance company, through its agent, The Webb Publishing Company, a letter in which she reported the death and explained how the death occurred.

Later, on March 31, 1931, she wrote again to the company reporting the accident and explaining how the death occurred.

From this uncontradicted evidence there were sufficient facts before the court from which an inference could be drawn as to how the accident happened and in view of the result reached it is entirely possible that it was upon this evidence alone that the court reached the result it did. This evidence is sufficient for an affirmance of this judgment without reference to the other controversial matters, especially in view of the fact that the correct result was reached by the trial court.

The court reserved the ruling upon the objection and admitted her testimony in evidence with the under-

standing that he reserved the right to strike it out if he later found it to be incompetent. Thereupon she said that her husband had told her that he went out to where the boys had scooped the feed out of the wagon and seeing that they had not gotten the feed dusted out clean from the edge of the wagon he got into the wagon and walked to the back and while he started to stoop over to dust the feed up, the horses started up and pitched him out of the back of the wagon. The appellant then moved to strike out this answer on the ground that it was not a part of the *res gestae* and was hearsay. The court reserved his ruling on this until the close of the evidence.

At the close of the evidence the court made this ruling and insofar as the record shows this ruling only, "At the close of the evidence the court overruled the motion of the defendants to strike out, which motion is contained on page 28 of this Bill of Exceptions and is as follows: (which is as above noted) to which ruling of the court the defendant excepts."

If we should concede that this was not admissible under the doctrine of *res gestae* still there was sufficient evidence before the court to sustain its finding, consequently the ruling would not call for a reversal.

In both of the letters referred to above the manner in which the accident occurred was described as described in the answer to the question above.

The evidence as to these reports of the death, which contained the statement of the manner in which the accident occurred resulting in the death were received in evidence without any objection and without limitation or restriction as to the purpose of the evidence. There was no evidence in the case that the death did not occur in the manner stated in these reports. So there can be no doubt about the evidence sustaining the

above statement of the facts in the case as to the death being accidental and how the accident occurred.

There is no need for an extended discussion of the next five of appellant's grounds for a new trial, as there was ample evidence introduced, without objection, namely the two letters from the appellee to the agents of the appellant concerning the manner of the accident and since this evidence was introduced without any restrictions it was, therefore, general evidence. *Morris* v. *Central West Casualty Co.* (1932), 351 Ill. 40, 183 N. E. 595; *First National Bank of Boston et al.* v. *Union Hospital of Fall River et al.* (1932), 281 Mass. 64, 183 N. E. 247, 249, 23 C. J. §1798; *East St. Louis Connecting Railway Co.* v. *Altgen* (1904), 210 Ill. 213, 71 N. E. 377; *Mason* v. *Truitt* (1912), 257 Ill. 18, 100 N. E. 202; *Nolan* v. *Barnes* (1915), 268 Ill. 515, 109 N. E. 316.

As to the seventh ground of the motion for a new trial we find that there was never any ruling made by the court on the admission of this evidence other than to say that he would admit it for the purpose of showing what treatment he (the doctor) gave or diagnosis he made. Since the record or briefs do not disclose that there was a final ruling on this objection such is not a proper ground for a new trial.

As to the demurrer, the clause in question, to say the least, was somewhat ambiguous and in such case the rule is that where ambiguity exists the policy is construed most strongly against the insurer and when this is done we must arrive at the conclusion that plaintiff was entitled to the benefits under the policy by reason of her husband being accidentally thrown from the vehicle above mentioned and not by being accidentally thrown from a wrecked or disabled vehicle. Therefore, there was no error in overruling the

demurrer to the complaint. *Federal Life Insurance Co.
v. Bolinger* (1935), 100 Ind. App. 222, 193 N. E. 681.

Finding no reversible error the judgment of the Marion Superior Court is affirmed.

Dudine, C. J., and Bridwell, J., concur in result.