IN RE BERNETTA WRETLIND, A FEEBLE-MINDED PERSON.
SOPHIE HATTON AND ANOTHER v. STATE.[1]

March 12, 1948.

No. 34,579.

[1]Reported in 32 N. W. (2d) 161.

*L. P. Johnson,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Irving M. Frisch,* Special Assistant Attorney General, for the State.

THOMAS GALLAGHER, JUSTICE.

Proceeding to obtain the release and discharge of Bernetta Wretlind, a minor and allegedly incompetent, from the care and custody of the director of public institutions, department of social security, and the superintendent of the Minnesota School and Colony at Faribault, Minnesota, to which said minor had been previously committed by order of the probate court of Lyon county, Minnesota.

A petition to obtain such release was executed by the mother and stepfather of said child. Both in probate court and in the subsequent appeal to the district court, they sought restoration to capacity of said child on the ground, among others, that the probate court at the time it made its original order committing the child to custody was without jurisdiction, and hence that such order was

null and void. In both probate court and district court, evidence was submitted by both sides on the issue of jurisdiction.

This appeal is from the judgment of the district court dated March 5, 1947, in substance decreeing that Bernetta is a feeble-minded person and so mentally defective as to be unable to manage herself or to adjust herself to her social environment; that she is in need of external care, supervision, and control for her own welfare and safety and that of the public; and that she be returned forthwith to the state school for the feeble-minded at Faribault known as the Minnesota School and Colony.

On appeal, petitioners assert that the evidence compelled judgment that the probate court at the time of the execution of its original order had no jurisdiction over the person of said Bernetta Wretlind because (1) no verified petition for her commitment was filed; (2) no notice of hearing was ever served upon her in accordance with the statutes; and (3) her personal appearance and the appearance of her mother and stepfather at the hearing did not constitute a waiver of her constitutional right to notice.

The evidence submitted indicates that at the time the original proceeding was instituted in probate court a verified petition, signed by Sophie Hatton, the mother, and by Charles Hatton, the stepfather of Bernetta, had been filed in the probate court of Lyon county. The evidence further disclosed, however, that no notary public was present at the time said petition was signed and that the verification thereon was affixed thereto by the notary public subsequent to its execution, at a different time and place, and without appearance of the petitioners, who at no time acknowledged it before any officer qualified to administer an oath.

The record discloses that no notice was given of the hearing, with the possible exception of a form postcard (which set the time and place of the hearing), to the original petitioners.

At this hearing there were present Bernetta, her mother, her stepfather, and the county attorney of Lyon county, who, under the

statute then in effect,[2] was required to represent the interest of the minor. Medical and other testimony was submitted, and subsequently the probate court made the order here under attack committing the child, then 12 years of age, to the custody of the director of public institutions, department of social security, and the superintendent of the Minnesota School and Colony, as required by M. S. A. 525.753.

The child thereupon was removed to the school at Faribault and there remained from December 8, 1943, until July 13, 1945, at which time she was released for a two-weeks' visit to the custody of her mother, who, with her husband, Charles Hatton, occupies a farm some six miles from Balaton in Lyon county. Before the expiration of the period authorized, this proceeding was instituted.

On appeal, the state denies the right of petitioners to attack the jurisdiction of the probate court, contending that (1) the original proceeding was in compliance with the statutory requirements then in effect, and the probate court had jurisdiction; (2) the proceeding, being for restoration to capacity, assumes the validity of the original order, which cannot be set aside; and (3) a proceeding for restoration to capacity such as this cannot form the basis for a collateral attack on the original jurisdiction of the probate court.

The issues now before this court do not extend to a consideration of the competency or incompetency of the minor. There is substantial evidence in the record to uphold the trial court's finding that she was a retarded mental case, and that for her own welfare commitment to the custody of the state school at Faribault was necessary. Likewise, there is evidence from which it might be concluded that, while she was mentally retarded, her home environment benefited her more than public custody, and that she was not

[2]Minn. St. 1941, 525.751, no longer in effect. Under M. S. A. 525.751, the present statute, it is provided:

"In all such proceedings the county attorney shall appear and represent the petitioner, and counsel shall be appointed for the patient who shall receive compensation * * * if the patient is financially unable to provide counsel."

so mentally defective as to require supervision, control, and care for her own and the public welfare, as required by L. 1945, c. 490. We are not concerned with this question at this time. The original jurisdiction of the probate court has been challenged, and that is the only issue here for determination.

■ By virtue of Minn. Const. art. 6, § 7, jurisdiction in guardianship matters is in the probate court. M. S. A. 525.54 provides that the probate court "may appoint one or two persons * * * as guardians of the person * * * of any person who is a minor, or who because of old age, or imperfection or deterioration of mentality is incompetent to manage his person * * * ." It further specifies that "Nothing herein contained shall diminish the power of any court to appoint a guardian to serve or protect the interest of any minor or other person under disability in any proceedings therein, * * * ." M. S. A. 525.752 specifies:

"The patient [feeble-minded person] shall be examined at such time and place and upon notice to such persons and served in such manner as the court may determine."

This section further provides that the court shall fix the time and place for hearing in such matters and that "ten days' notice by mail shall be given to the director of public institutions, and to such other persons and in such manner as the court may direct."

The state asserts that, since the foregoing statutes do not specify any particular notice either for the minor here involved or for the petitioners, there has been no failure to comply with statutory requirements. This, together with the fact that the parents of the minor involved were present in person, the state contends, gave the court jurisdiction at the time of the original hearing and when its order was subsequently made.

■ It has frequently been held that, although a statute authorizes the appointment of a guardian for incompetents without the necessity of notice or process in connection therewith, nevertheless notice is essential in such proceedings under the due process clauses of both the state constitution (Minn. Const. art. 1, § 7) and the

federal constitution (U. S. Const. Amend. XIV, § 1). Thus, in In re Restoration to Capacity of Masters, 216 Minn. 553, 556, 13 N. W. (2d) 487, 489, 158 A. L. R. 1210, which involved interpretation of a statutory provision similar to § 525.752, we stated:

"* * * such notice must satisfy the constitutional requirement of 'due process of law.' This prerequisite to a valid commitment cannot be ignored either by the legislature or by a court, proceeding as the legislature prescribes. State ex rel. Blaisdell v. Billings, 55 Minn. 467, 57 N. W. 206, 794, 43 A. S. R. 525; Juster Bros. Inc. v. Christgau, 214 Minn. 108, 7 N. W. (2d) 501; * * *.

"Notice in commitment proceedings is not always practicable where the person sought to be committed is violently and dangerously insane. But those types of insanity or feeble-mindedness which manifest themselves in harmless symptoms lend themselves to the orderly processes of a formal hearing and adjudication; and in such cases *the constitutional mandates must be strictly observed by giving the person under inquiry not only adequate notice of the fact of a hearing and the purpose thereof, but also every opportunity to be heard before the order of commitment is issued."* (Italics supplied.)

The same result was arrived at in Jasperson v. Jacobson, 224 Minn. 76, 27 N. W. (2d) 788.

This doctrine is in accordance with the general rule. See, McKinstry v. Dewey, 192 Iowa 753, 185 N. W. 565, 23 A. L. R. 587; Chase v. Hathaway, 14 Mass. 222; Wait v. Maxwell, 22 Mass. (Pick.) 217, 16 Am. D. 391; Hathaway v. Clark, 22 Mass. (Pick.) 490; McCurry v. Hooper, 12 Ala. 823, 46 Am. D. 280; Eslava v. Lepretre, 21 Ala. 504, 56 Am. D. 266; Moody v. Bibb, 50 Ala. 245; Molton v. Henderson, 62 Ala. 426; Eddy v. People, 15 Ill. 386; Mason v. Beazley, 10 Ky. L. 154; Stewart v. Taylor, 111 Ky. 247, 63 S. W. 783; Allis v. Morton, 70 Mass. (Gray) 63; Hutchins v. Johnson, 12 Conn. 376, 30 Am. D. 622; Holman v. Holman, 80 Me. 139, 13 A. 576; Royal Arcanum v. Nicholson, 104 Md. 472, 65 A. 320, 10 Ann. Cas. 213; In re Wellman, 3 Kan. App. 100, 45 P. 726; In re Allen, 82 Vt. 365, 73 A. 1078, 26 L. R. A. (N. S.) 232; Jones v.

Learned, 17 Colo. App. 76, 66 P. 1071; Evans v. Johnson, 39 W. Va. 299, 19 S. E. 623, 23 L. R. A. 737, 45 A. S. R. 912; Ex parte Dozier, 63 Tenn. (Baxt.) 81; Hunt v. Searcy, 167 Mo. 158, 67 S. W. 206.

While the foregoing cases involve proceedings relative to the competency of adults, because of the humanitarian as well as the constitutional doctrines upon which they rest, they must be equally applicable to proceedings involving the competency of minors, who are ordinarily totally incapable of asserting or protecting their rights.

It is well settled that an infant becomes a ward of the court immediately upon the institution of a proceeding affecting his person, and that it is the right and duty of the court, as well as the policy of the law, to protect the interests of such minors. Even in the absence of a statute requiring appointment of a guardian in such cases and notwithstanding the absence of a motion therefor by the representative of the minor, the court should take such protective measures on its own motion where necessary. Mote v. Morton, 52 Fla. 548, 41 So. 607; Tymony v. Tymony, 331 Ill. 420, 163 N. E. 393; Mason v. Truitt, 257 Ill. 18, 100 N. E. 202; Johnson v. Turner, 319 Ill. App. 265, 49 N. E. (2d) 297; Kroot v. Liberty Bank, 307 Ill. App. 209, 30 N. E. (2d) 92; Schrader v. Schrader, 280 Ill. App. 561; Everson v. Hurn, 89 Neb. 716, 131 N. W. 1130; Latta v. Trustees, etc., 213 N. C. 462, 196 S. E. 862; Harjo v. Johnston, 187 Okl. 561, 104 P. (2d) 985; Wilson v. Mullen, 11 Tenn. App. 319; Dial v. Martin (Tex. Civ. App.) 37 S. W. (2d) 166.

Under these authorities, it is clear that, notwithstanding statutory language similar to that set forth in § 525.752, requiring only such notice "as the court may direct" in incompetency proceedings, before an incompetent infant can be placed in custody adequate notice of the hearing thereon and the purpose of such hearing should be served upon the minor either through the natural guardian, or, where the natural guardian be an adversary party, through a duly appointed guardian or representative named by the court for the purpose of the proceeding.

■ The state asserts, however, that the voluntary appearance of the mother, the child's natural guardian, and the stepfather constituted a waiver of notice and gave the court jurisdiction over the minor's person. While it is generally true that the appearance of an adult party in an incompetency proceeding constitutes a waiver of process, this rule would not be applicable insofar as a child is concerned. As stated in Phelps v. Heaton, 79 Minn. 476, 483, 82 N. W. 990, 991:

"* * * Infants cannot waive their rights, because of want of capacity to do so. This is elementary. * * * minors have not capacity to waive or admit service of process upon them * * *."

It would seem clear, likewise, that the voluntary appearance of the child's mother and stepfather in the proceeding in the instant case could not constitute a waiver of due process or give the court jurisdiction over the person of the minor. They were the petitioners seeking the commitment of the person of such child, and hence adversary parties with interests in conflict with those of the child insofar as the original proceeding was concerned. As stated in 43 C. J. S., Infants, § 110e, p. 294:

"There should be no conflicting interests between the infant and the person representing him, and hence a person whose interest in a suit is adverse to an infant should not be appointed guardian ad litem, or permitted to act as the next friend of the infant."

From the foregoing, it is evident that in the instant case neither the child nor her mother or stepfather, who were adversary parties herein, could, by their appearance in court, give the court jurisdiction over the child's person or waive her constitutional right to due process.

■ Likewise, it is apparent that the county attorney, who by virtue of Minn. St. 1941, 525.751, then in effect, was authorized to act as counsel for the minor, could not waive the prerequisites of due process insofar as the child was concerned. As stated in 43 C. J. S., Infants, § 114b:

"The authority and powers of the attorney are limited to those possessed by the guardian ad litem or next friend. * * *

"The attorney cannot waive or admit away any substantial rights of the infant, or consent to anything which may be prejudicial to the infant."

This general rule is in harmony with the rule expressed by this court in Germain v. Sheehan, 25 Minn. 338, 339, where we stated:

"* * * The plaintiff, being an infant when the action was commenced, should have appeared by guardian, * * * and his appearance by attorney was erroneous."

The authorities cited dispose of the question of waiver of due process by voluntary appearance and lead us to the conclusion that the probate court had failed to acquire jurisdiction of the person of the child at the time of the original order herein.

■ Upon the filing of the petition provided for in M. S. A. 525.541, the court, upon its own motion (43 C. J. S., Infants, § 110f, p. 296), should have appointed a guardian *ad litem* to protect the interests of the child. There can be no doubt that it possessed this power, not only by virtue of the authority granted it by M. S. A. 525.54 above quoted, but even in the absence of such a statutory authorization, since prohibitive clauses of the constitution such as the due process clause are self-executing and require no legislation for their enforcement. Willis v. Mabon, 48 Minn. 140, 50 N. W. 1110, 16 L. R. A. 281, 31 A. S. R. 626; Payne v. Lee, 222 Minn. 269, 24 N. W. (2d) 259; State v. Kyle, 166 Mo. 287, 65 S. W. 763, 56 L. R. A. 115; King v. Grace, 293 Mass. 244, 200 N. E. 346; 43 C. J. S., Infants, § 108a, p. 276.

Such an appointment may be made by the court on mere suggestion or application in open court, or by the court itself without petition or application of any party, where the interests of the infant require it. Gill's Estate, 20 Pa. Dist. 302; Kroot v. Liberty Bank, 307 Ill. App. 209, 30 N. E. (2d) 92; Latta v. Trustees, etc., 213 N. C. 462, 196 S. E. 862; Dial v. Martin (Tex. Civ. App.) 37 S. W. (2d) 166.

Under the authorities cited, because of the failure of the probate court to require service of process upon a duly designated guardian *ad litem* of the minor, we hold that no jurisdiction existed at the time of this proceeding, notwithstanding the personal appearance of the mother, the natural guardian, and the stepfather, who were adversary parties, and notwithstanding the appearance of the county attorney, who neither by virtue of statute nor by common law was authorized to accept service of process on behalf of the child or to waive the constitutional requisites with reference thereto.

In this holding we do not wish to appear critical of the proceedings in the court below or of the public authorities involved. We have not had occasion prior hereto to lay down a definite rule or formula applicable in these cases. It may be, as suggested by counsel for the state, that in new proceedings the same final result will be reached. With this we are not so much concerned as we are with the establishment of a fair and just procedure in strict compliance with the requisites of due process, to the end that in the future those incapable of protecting themselves or asserting their rights may have the protection which the constitution intended.

■ The state asserts that the present proceeding constitutes a collateral attack upon the probate court order, and hence should be dismissed. We do not agree with this. The proceeding here was instituted in the same court in which the original order was made. The petition in both probate court and district court alleged that at the time of the original order the probate court was without jurisdiction. In both courts this issue was tried and evidence submitted thereon.

7 Wd. & Phr. (Perm. ed.) 591, defines "collateral attack" as follows:

"By a 'collateral attack' is meant every proceeding in which the integrity of the judgment is challenged, *except those made in the action wherein the judgment is rendered,* * * * *except suits brought to obtain decrees declaring judgment to be void ab initio.*" (Italics supplied.)

Applying this rule to district court proceedings requiring service of summons, in Vaule v. Miller, 69 Minn. 440, 72 N. W. 452, we stated:

"An action may be maintained to set aside a judgment valid on its face on the ground that the summons was never served on the defendant. Such an action is not a collateral, but a direct, attack upon the judgment."

From the authorities cited, it is evident that this proceeding, instituted in the identical court issuing the original order, constituted a direct attack upon the court's jurisdiction; hence it properly brought the question of jurisdiction before the court.

Reversed.